UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                        *16CV322V*

                    v.                                  **Order**


KENNETH F. CASE, et al.,

                              Defendants.


        Before the Court is plaintiff's motion to compel production (Docket No. 32[1]), essentially

based upon the Order of Erie County Judge Thomas Franczyk unsealing certain otherwise

confidential prosecution documents from the investigation of the murders of Nelson and Miguel

and Camacho (id., Ex. C).  An identical motion was filed in Ortiz v. Wagstaff, et al., Case

No. 16CV321 (Wagstaff, Docket No. 26).  These motions were briefed and argued together, with

defendants' respective responses due by May 31, 2017, and argument held on June 7, 2017

(Docket Nos. 30, 31, 33).  Defendants duly filed their respective responses in this case (Docket

No. 34).  Following argument of these motions in both cases decision was reserved (Docket

No. 35).  But, as noted by defense counsel in Wagstaff during oral argument, the cases are

separate and defendants in each case are in different postures; hence, this Court enters separate

Orders in each case for the respective motions.

---

[1]Citation merely to a Docket Number only refers to filings in this case; it also may be cited herein as "Case
Docket No. __."  This is to distinguish citations to filings in Ortiz v. Wagstaff, Case No. 16CV321, referred to
"Wagstaff Docket No. __."

BACKGROUND

This is the action against officials[2] in the Erie County District Attorney's office for the prosecution of plaintiff for the murders of Nelson and Miguel Camacho. Both this case and Wagstaff arise from plaintiff's conviction and subsequent exoneration from the Camacho murders, with plaintiff alleging wrongful conviction and imprisonment, as well as state law claims for malicious prosecution. In November 2004, plaintiff was arrested, tried and convicted of the murders of the Camacho brothers. Plaintiff in Wagstaff alleges that defendants failed and refused to accept proof that exonerated plaintiff (Wagstaff, Docket No. 1, Compl. ¶ 51), that they were negligent in failing to investigate all leads (id. ¶ 53). Similarly, in Case, plaintiff alleges that the then-District Attorney Frank Sedita, III, failed to accept proof that plaintiff was wrongfully convicted. Plaintiff argues that this willful refusal led plaintiff to be incarcerated for ten years (e.g., Case, Docket No. 1, Compl. ¶ 54), including the period from November 2012 (after the commencement of the federal prosecution described below) until his exoneration in May 2015.

Around November 2012, the Federal Bureau of Investigation and the U.S. Attorney's office conducted an investigation of the 10th and 7th Street gangs, learning that three other men were responsible for the Camacho murders, see United States v. Montalvo, et al., No. 11CR366 (hereinafter "Montalvo"), Docket No. 68, Superseding Indict. In Montalvo, defendants Misael Montalvo, Efrain Hidalgo, and Brandon Jonas eventually were charged with discharging a firearm causing the deaths of Nelson and Miguel Camacho, Montalvo, supra, Docket No. 68, Superseding Indict., Counts 2, 3, Special Findings. Montalvo (Montalvo, Docket No. 249),

---

[2]Named defendants include former District Attorneys Frank Clark and (now Justice) Frank Sedita, III; former Assistant District Attorney (now Erie County Court Judge) Kenneth Case; as well as the Erie County District Attorney's Office itself. Docket No. 1, Compl.

Hidalgo (Montalvo, Docket No. 239), and Jonas (Montalvo, Docket No. 244) each later entered guilty pleas, with Hidalgo (Montalvo, minute entry, Feb. 26, 2015) and Jonas (Montalvo, minute entry Mar. 11, 2015) pleading guilty to Count 2 of the Superseding Indictment (Montalvo, Docket No. 68) admitting to discharging a firearm causing death, with a special finding that the victims were the Camacho brothers (id.). One of these three defendants has been sentenced (Montalvo, Docket No. 327, Judgment as to Efrain Hidalgo) and the remaining defendants await decisions relative to their respective sentencing (Montalvo, Docket Nos. 264-66, 277, 300, 329).

Pursuant to Judge Richard Arcara's Orders, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, Order of Nov. 8, 2012; id., Order of Mar. 7, 2013, the Government provided information first to the Erie County District Attorney and then to plaintiff's criminal counsel (the late John Nunchereno) of plaintiff's innocence due to the involvement of the Montalvo defendants by allowing release of federal Grand Jury minutes and materials. The second Order released a copy of the Grand Jury materials to plaintiff's criminal defense counsel, Mr. Nunchereno, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, Order of Mar. 7, 2013. A motion in state court to dismiss plaintiff's Indictment was granted in May 2015 (despite the Case defendants' initial opposition) and plaintiff commenced in this Court Case and Wagstaff the next year.

*In Camera*

The parties in both cases obtained an Order from Erie County Judge Thomas Franczyk unsealing the prosecution and police department files surrounding the Camacho brothers' murders for release to defense counsel in these two cases. Counsel then was to identify to this Court objections and privileges for in camera review.

3

After a series of status conferences regarding production of the confidential information from the defendants (Docket Nos. 20, 24, 27, 30), this Court reviewed <u>in camera</u> the materials produced by the police defendants in <u>Wagstaff</u>. Presuming that the prosecution files in <u>Case</u> would be similar and that plaintiff's motion to compel is identical in both cases, this Court considered together production in both cases. The defendants in <u>Wagstaff</u> produced a privilege log of the <u>in camera</u> documents, asserting privileges that the documents contained sensitive law enforcement information that may create safety risks regarding confidential informants and witnesses; documents that may reveal police tactics and strategies for investigations; some may have been obtained from or describing confidential proffers; at least one document possibly containing attorney work product. The privilege log also asserted that some of the items were not relevant to plaintiff's claims. Defendants contend, but did not specifically identify, that at least some of these materials were obtained from the Grand Jury (pursuant to Judge Arcara's Orders) and that Judge Arcara's Orders limited disclosure of these items, <u>In re May 2011 Grand Jury Impaneled May 6, 2011</u>, Misc. No. 13MR17, Order of Nov. 8, 2012; <u>see</u> <u>Case</u>, Docket No. 26. Those Orders disclosed Grand Jury documents and transcripts to the Erie County District Attorney and to in the investigation that led to the Indictment in <u>Montalvo</u>.

Defendants in <u>Case</u>, however, declined to produce their records for <u>in camera</u> inspection or production to plaintiff and awaited guidance either from the United States or this Court on releasing federal Grand Jury materials. They insisted upon some form of clearance to produce their files given the federal Grand Jury material they contained.

This Court had invited input from the United States Attorney (including possible limited intervention in these cases) because of the unknowns in the <u>in camera</u> material (Docket No. 25),

4

see Fed. R. Civ. P. 24; 6-24 Moore's Federal Practice—Civil § 24.23 (2017). Given these concerns, this Court will avoid inadvertent disclosure of material that should remain confidential. The in camera materials from Wagstaff, however, were not clearly delineated to show that they were federal Grand Jury materials or not.

From the privilege log and the Wagstaff in camera items, most of the police investigative file post-date plaintiff's 2004 arrest and his 2006 guilty plea (see Case, Docket No. 1, Compl. ¶ 22; Wagstaff, Docket No. 1, Compl. ¶ 22). One document in the Wagstaff in camera materials is a synopsis of the police homicide investigation. According to this summary (hereinafter cited as "[summary]" and page number cited), in November 2004, the police interviewed a witness who revealed the whereabouts of Hidalgo at the time of the murders [summary at 10]. In 2005, an informant told a detective that two other men murdered the Camachos, but the police in 2008 could not identify the incident referenced because the Camacho murders were cleared according to their records [summary at 11-12], but that informant recanted the statement in 2011 [summary at 14]. The summary notes a 2008 proffer made to the United States Attorney that alleged that someone other than plaintiff committed these murders [summary at 12]. In September 2009, a federal task force was established (including the Buffalo Police Department) to investigate gang activity in the Lower West Side, with Hidalgo becoming known to the task force [id.]. In June 2011, two officers met an informant who said they had information regarding Hidalgo's role in the murders [id.]. The summary also makes references to correspondence received by the United States Attorney's office relative to the investigation.

On July 11, 2012, plaintiff was interviewed by officers, but he generally declined to answer questions [summary at 21]. In August 2012, another source was interviewed and said

5

that plaintiff's apartment was being monitored and that on the night of the murder did not show anyone leaving the house [statement at 23]. Proffer materials and interviews identified as confidential sources or work product included in the in camera have internal redactions (but not consistently).

A cursory review of the Wagstaff in camera materials reveals a continuing investigation of the Camacho murders that occurred following plaintiff's conviction, following up leads first raised during the initial investigation of the Camacho murders and the overlapping investigation of the West Side gang interdiction. Many of the documents concern the gang interdiction investigation(s) and lead to evidence for the prosecution of Montalvo, Hidalgo, and Jonas.

At the status conference of April 19, 2017 (Docket No. 27), parties (with an Assistant U.S. Attorney appearing as special friend of the Court) were instructed to work out the disputes from production of in camera materials and determine the confidential or highly sensitive materials involved, and whether plaintiff's present civil counsel somehow obtained the materials sought through plaintiff's now deceased criminal counsel. On May 10, 2017, the parties received a redacted version of the Government's transmittal letter of the federal Grand Jury materials to the Erie County District Attorney and to plaintiff's late criminal attorney (Docket No. 30). After further discussion about production of the sought materials, this Court gave plaintiff until May 24, 2017 (id.; see Docket No. 31), to formally move to compel. Plaintiff then filed the present motion to compel (Docket No. 32).

*Plaintiff's Motion to Compel*

In plaintiff's motion (filed simultaneously in both cases, cf. Wagstaff, Docket No. 26), plaintiff noted that the records in the state criminal action were sealed pursuant to state law

(Docket No. 32, Pl. Atty. Affirm. ¶ 4) and plaintiff through counsel sought to unseal them, obtaining the Order from Judge Franczyk to unseal (id. ¶¶ 5-6, 7-8, 9). This procedure is the means for a federal civil rights litigant to obtain otherwise confidential prosecution files by first applying for unsealing in state court (Docket No. 32, Pl. Memo. at first, second unnumbered pages), see Townes v. New York City, No. CV-94-2595, 1996 U.S. Dist. LEXIS 20220, at *29 (E.D.N.Y. Apr. 1, 1996), and therefore Judge Franczyk's Order is enforceable in this Court (id. at second unnumbered page). Following the January 19, 2017, status conference (Docket No. 20; see Docket No. 32, Pl. Atty. Affirm. ¶ 10, Ex. E), plaintiff wrote to have defendants either produce the unsealed confidential materials or provide them to this Court for in camera inspection (Docket No. 32, Pl. Atty. Affirm. ¶ 11, Ex. E), but (without objection) no such production or provision of the documents for in camera inspection occurred (id. ¶ 12). A further status conference occurred (Docket Nos. 22, 24, 27, 30; 32, Pl. Atty. Affirm. ¶ 13, Ex. G) but the defendants in this case still had not produced. Plaintiff argues that the Case defendants had no basis for not producing the non-Grand Jury portions of the prosecution's file and are in contempt of Judge Franczyk's Order (Docket No. 32, Pl. Atty. Affirm. ¶ 16).

Plaintiff contends that the Case defendants' only objection to production is relying upon Judge Arcara's Orders releasing the federal Grand Jury materials to limited parties and for limited purposes (id. ¶ 17, Ex. J). Plaintiff, however, believes that Judge Arcara's Orders are being misconstrued and Case's counsel had agreed to produce regardless of those Orders (id. ¶ 18). He argues that defendants failed to raise a legally sufficient basis for their failure to comply with Judge Franczyk's Order (id. ¶ 22). He concludes that "fundamental fairness and judicial integrity require that" defendants produce the files in this case (and in Wagstaff), for

without such disclosure plaintiff would be prejudiced in any anticipated summary judgment motions filed in these cases (id. ¶ 29).

Plaintiff next argues that this Court has the discretion and authority to order the unsealing of federal Grand Jury materials, asserting that he has established need for the materials overwhelming the norms of confidentiality (Docket No. 32, Pl. Memo. at third to fifth unnumbered pages). But plaintiff does not address the authority of one Judge (here a Magistrate Judge) to alter the Order of another Judge (here a District Judge) which granted a limited release of Grand Jury materials.

Alternatively, plaintiff urges in camera inspection of the Grand Jury materials (id. at sixth unnumbered page).

The Case defendants argue that plaintiff failed to file Judge Franczyk's state court Order (Docket No. 34, Defs. Atty. Decl. ¶ 6), rendering it a nullity (see id. ¶ 13 (this Court in effect setting aside that Order)). They also contend that plaintiff's civil counsel in this action probably has the federal Grand Jury materials provided to plaintiff's late criminal defense counsel (id. ¶ 16). They note that plaintiff failed to file copies of their discovery demands and defendants' responses with this motion to compel (id. ¶ 10, cf. id. ¶¶ 8-9, Exs. B, C), plaintiff fails to argue the insufficiency of defendants' responses (id. ¶ 10), or certify his good faith attempts to resolve this matter short of the present motion (id.).

To the extent that plaintiff moves for relief from Judge Arcara's Orders (id. ¶ 15, Ex. E, which defendants deem bar release of the federal Grand Jury materials), the Case defendants join in that request, urging this Court to alter those Orders (id. ¶¶ 15, 19). Neither side, however,

argues the authority, jurisdiction, or basis for this Court to alter the Orders issued by an Article III judge, a judge not assigned to this case (or to <u>Wagstaff</u>).

DISCUSSION

I.     Applicable Standard

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  <u>See</u> 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery, as well as upholding evidentiary privileges for confidential information.  Fed. R. Civ. P. 26(c)(1), (1)(B)-(C), (G); <u>see</u> <u>id.</u> R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith

conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

II.     Plaintiff's Cause of Action—Wrongful Conviction

This Court first considers plaintiff's claims to determine the scope of discovery.

For plaintiff's claims of wrongful conviction in violation of the Fourth and Fourteenth Amendments he must show a violation of his rights under those Amendments and the elements of a wrongful conviction claim, see Manganiello v. City of N.Y., 612 F.3d 149, 160-61 (2d Cir. 2010). The Supreme Court in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), set forth at least one element for an unconstitutional conviction or imprisonment claim; a § 1983 plaintiff needs to prove that his conviction was reversed, expunged, declared invalid, or called into question by a grant of habeas relief in order to seek damages. The cases under Heck have dealt with plaintiffs who failed to allege a reversal or expungement of the offending conviction, e.g., Okongwu v. County of Erie, No. 14CV832, 2016 U.S. Dist. LEXIS 120807 (W.D.N.Y. Sept. 7, 2016)

(Skretny, J.), or considered when the claim accrues, see, e.g., Heck, supra, 512 U.S. at 481-82, and thus have not dealt with other elements for a wrongful conviction claim.

In Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998), the Second Circuit affirmed a judgment against defendants for violating plaintiff's Fourth Amendment rights against unreasonable seizure (there, restriction of his travel following arraignment) in his § 1983 malicious prosecution claims, id. at 941, 944. The district court had instructed the jury for plaintiff's § 1983 malicious prosecution claim that plaintiff was required to prove commencement or continuance of a criminal proceeding by defendants against plaintiff; termination of that proceeding in plaintiff's favor; the absence of probable cause; actual malice on defendants' part; and a post-arraignment deprivation of liberty (again, the travel restriction), id. at 943; see id. at 945-46. Applying the various decisions in Albright v. Oliver, 510 U.S. 266 (1994), the Second Circuit found no due process violation occurred but instead an unreasonable seizure of plaintiff's person in violation of the Fourth Amendment, Murphy, supra, 118 F.3d at 944. The elements of plaintiff's § 1983 malicious prosecution claim for that seizure is establishing seizure by a state actor; the seizure resulted from initiation or pendency of judicial proceedings, id., with the reasonableness of the seizure overlapping a state common law malicious prosecution element of probable cause, id. at 946.

The wrongful conviction tort is analogous to malicious prosecution, Heck, supra, 512 U.S. at 484; see also Pierce v. Gilchrist, 359 F.3d 1279, 1289, 1286 n.3 (10th Cir. 2004) (constitutional violation under § 1983 following wrongful conviction applied analogous common law tort of malicious prosecution, with claim predicated on federal constitutional violation). Courts have adopted elements of state common law tort of malicious prosecution that "are

consistent with enforcement of a constitutional right" and "those that are not are rejected,"
Castellano v. Fragozo, 352 F.3d 939, 951 (5th Cir. 2003) (en banc). The en banc Fifth Circuit
noted that "the Fourth Amendment of the United States Constitution cannot be circumscribed by
state tort law," id. at 955. As a § 1983 claim, plaintiff needs to prove the deprivation of a federal
constitutional right by persons acting under color of law, 42 U.S.C. § 1983; West v. Atkins,
487 U.S. 42, 48 (1988); e.g., Sanders v. Walmart Stores, Inc., No. 3:16-cv-312-DJH, 2016 U.S.
Dist. LEXIS 146565, at *6 (W.D. Ky. Oct. 24, 2016). Singer v. Fulton County Sheriff, 63 F.3d
110, 116 (2d Cir. 1995), held that plaintiff had sufficiently alleged that defendants had violated
his "Fourth Amendment right to be free from unreasonable seizure of his person," to state "a
§ 1983 claim for malicious prosecution," id. Once plaintiff presents this claim "the court must
engage in two inquiries: whether the defendant's conduct was tortious; and whether the
plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth
Amendment," id.; see also Murphy, supra, 118 F.3d at 944; Castellano, supra, 352 F.3d at 950, in
the context of plaintiff being charged but later having the charges dismissed, Singer, supra,
63 F.3d at 112.

Malicious prosecution under New York common law, see Manganiello, supra, 612 F.3d
at 160-61, is that the defendants initiated a prosecution against him, without probable cause to
believe the proceeding could succeed, the proceedings were begun with malice, and that the
matter terminated in plaintiff's favor, Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016);
Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Cameron v. City of N.Y.,
598 F.3d 50, 63 (2d Cir. 2010). The favorable termination element of malicious prosecution has
not been extended to a wrongful conviction claim, Poventud v. City of N.Y., 750 F.3d 121, 130-

32, 136 (2d Cir. 2014) (in banc). Plaintiff in both cases alleges that his 2004 Indictment was dismissed (Case, Docket No. 1, Compl. ¶ 38; see Wagstaff, Docket No. 1, Compl. ¶ 38).

Thus, for this discovery dispute (yet to be reduced to a motion to compel or for a protective Order), the issue becomes whether the contents of these in camera records are relevant to that claim, Fed. R. Civ. P. 26(b)(1). But the general scope of discovery allows parties to obtain "nonprivileged matter" relevant to a claim or defense, id. Applying malicious prosecution elements, at issue for that claim is whether probable cause for charging plaintiff existed and whether defendants in both cases acted with malice in pursuing the claims against him. Discovery also embraces discovery of nonprivileged matter relevant to a **defense**; defendants cannot rely upon documents in the in camera material to prove their defense without producing it to plaintiff.

If the malicious prosecution elements (save favorable termination) are applied to these claims of wrongful conviction in violation of the Fourth Amendment and under § 1983, the issue of probable cause here arises well after plaintiff's Indictment and conviction. The in camera file reviewed here consists mostly of the post-indictment investigation leading to the federal charges in Montalvo. Probable cause "can cease to exist if some fact later surfaces to exonerate the accused," Coleman v. City of N.Y., 49 Fed. App'x 342 (2d Cir. 2002) (Summary Order); see Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact," Lowth, supra, 82 F.3d at 571. Police officers and prosecutors, however, "are not obliged to exonerate [a] plaintiff or uncover exculpatory evidence, but the 'failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of

probable cause,'" Lawrence v. City Cadillac, No. 10CV3324, 2010 U.S. Dist. LEXIS 132761, at

*20 (S.D.N.Y. Dec. 9, 2010) (quoting Lowth, supra, 82 F.3d at 571). The in camera file here is

proof of the intervening fact, the Montalvo investigation and prosecution.

But the entirety of that file is not necessary to establish plaintiff's claim or defend against

it. Concerns remain about privileged items contained therein, such as portions (if not the

entirety) of the file that were Grand Jury materials; disclosure of proffers and proffering subjects;

disclosure of other confidential sources; and disclosure of confidential subjects in pending

investigations. One reasons for reaching out to the Government here was to identify the

existence of these in order to restrict production of sensitive items to plaintiff. Otherwise,

decision of whether, and to what extent, to disclose the in camera file is in a vacuum.

III.    Motion to Compel

As a motion to compel, ostensibly it should fail. As defense notes (Docket No. 34, Defs.

Atty. Decl. ¶¶ 10-11), plaintiff fails to present discovery demands or a defense response or the

deficiencies in those responses or plaintiff's objections to defendants' stated objections and

asserted privileges. Plaintiff also failed to outline his efforts at resolving this discovery dispute

in good faith short of this motion (id. ¶ 10).

But this Court and the parties have discussed these issues in various status conferences

(Docket Nos. 20, 22, 24, 27, 30) plaintiff's desire to obtain and review the unsealed police and

prosecution files. Coupled with efforts suggested by this Court for the parties to try to work out

their difference at or between conferences, the good faith resolution requirement was met albeit

absent the formal certification.

14

As for failing to present his demands and defense responses to this motion to compel, this Court is aware that what plaintiff seeks is the otherwise confidential state prosecution and investigative files, unsealed by Judge Franczyk's Order. What is troubling, however, while the parties and this Court are well familiar with this Order, technically it was never served or entered as required under New York procedure to make it effective, cf. N.Y. CPLR 2219(a); N.Y. Unif. R. 202.8(g); David D. Siegel, New York Practice § 250, at 439 (5th ed. 2011), (assuming that this Court is the proper jurisdiction to enforce a state Court Order). But absent formal objection to what defendants have produced and the objections to production they raised, plaintiff's motion to compel is **denied**. But given the partial foray into the otherwise confidential materials at issue that led to this motion, this Court next considers whether plaintiff is entitled to some amount of disclosure from the materials ordered unsealed by Judge Franczyk.

IV.    Scope of Production

This Court has not seen in camera the prosecutor's file to determine what of that file could be produced. Also, the Case defendants produced with their response the discovery demands (Docket No. 34, Defs. Atty. Decl., Ex. C) and their responses (id., Ex. D), wherein they asserted privileges against disclosure (attorney-client, attorney work product, materials prepared in anticipation of litigation, id., Ex. D, at 1).

But after conducting an in camera review of the police investigative file from the Wagstaff defendants, this Court can make a rough determination of what can and cannot be produced from the Case defendants' files outside of federal Grand Jury materials. What remained unclear to this Court was what portion of those files consisted of federal materials and what portion did not. Absent identification by the federal Government, this Court would only be

guessing what items were federal Grand Jury materials and what, for example, identified confidential sources.

In light of the in camera inspection of the production in Wagstaff, this Court presumes an overlap of material contained in the Buffalo Police Department investigation files and the prosecution files. Analysis of the scope of production in Wagstaff thus informs the scope of the Case defendants' production in this case. In Wagstaff, this Court ordered the defense there to produce the police file synopsis of the contents of the file and plaintiff's statements that were part of the investigative file (Wagstaff, Docket No. 30, Order at 15-16). In Case, similar materials can be produced to plaintiff from the prosecution files; the other items identified in Wagstaff as being privileged, confidential, or not relevant to plaintiff's present claims need not be produced. As in Wagstaff, if a summary is contained in the prosecution file, a redacted version of that summary could be produced (or a privilege log) in order for plaintiff to identify such documents that are not produced initially for him to then move specifically to compel production and resist the privilege asserted for non-production. What remains is that part of those files that were federal Grand Jury materials governed by Judge Arcara's Orders, discussed next.

V.      Federal Grand Jury and Judge Arcara's Orders

All parties in Case urge this Court to alter Judge Arcara's Orders to allow release of the federal Grand Jury materials produced to defendants and to plaintiff's late criminal defense attorney (see Docket No. 32, Pl. Memo. at third to fifth unnumbered pages; Docket No. 34, Defs. Atty. Decl. ¶¶ 15, 19). No one argues the authority or jurisdiction of this Court (or assigned Judge Lawrence Vilardo) to alter Judge Arcara's Orders to expressly allow release of the Grand

16

Jury materials to plaintiff's counsel in this civil case.  Plaintiff in his papers and oral argument did not confirm or deny that he had obtained the federal Grand Jury materials from his late criminal defense counsel.

The in camera materials reviewed by this Court from the Wagstaff defendants, however, did not indicate that they were provided to the Grand Jury and thus were encompassed in Judge Arcara's Orders.  That concern led to the hesitance of the Case defendants to produce the Erie County District Attorney's file which includes (at least in part) Grand Jury materials provided pursuant to Judge Arcara's Orders.

Generally outside of an appeal (which Magistrate Judges cannot conduct over Orders of District Judges), only the judge who issued an Order can revise or grant relief from it in that judge's discretion.  Magistrate Judges lack the authority to revise or alter a District Judge's Orders.  An added complication here is that these civil cases were not assigned to Judge Arcara; while Judge Arcara was assigned the Montalvo case and the Grand Jury materials release proceeding, Judge Vilardo was assigned Case and Wagstaff.

Out of abundance of caution, plaintiff or defendants could seek leave from Judge Arcara to amend those Orders to allow plaintiff access and use of the Grand Jury materials in this case as well, but Judge Arcara either would have to enter Orders in cases not assigned to him (absent seeking reassignment of these cases) or he could have such an Order filed in the proceeding releasing these materials in the first place, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, but plaintiff and some of the Case defendants are not parties to that proceeding.

Nevertheless, amending or extending Judge Arcara's Orders to expressly order release of the Grand Jury materials to plaintiff and his civil counsel is beyond this Court's jurisdiction and authority and is **denied**.

There may be two possible sources of relief to adjust Judge Arcara's Orders: an application to Judge Arcara to amend the Orders in the In re May 11 Grand Jury proceeding or an application to Chief Judge Geraci (with notice to Judges Vilardo and Arcara) requesting reassignment of one (Case, for example) or both civil cases to Judge Arcara for disposition of the Grand Jury matter following reassignment.

CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 32) to compel is **denied**.

Following this Court's in camera review of the Buffalo Police Department files from the Wagstaff defendants and presuming similar materials contained in the prosecution files under control of the Case defendants, defendants here shall produce such documents from their file as identified in this Order and more specifically described in the Wagstaff Order (Wagstaff, Docket No. 30, Order at 15-16). This Court **declines** to alter Judge Arcara's Orders surrounding disclosure of federal Grand Jury materials.

So Ordered.

> _/s/ Hugh B. Scott_
> Hon. Hugh B. Scott
> United States Magistrate Judge

Dated: Buffalo, New York
     June 23, 2017