UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                              Plaintiff,

                                                          **Hon. Hugh B. Scott**

                                                              16CV322V

                    v.                                       **Report
                                                                &
                                                          Recommendations**

KENNETH F. CASE, et al.,

                              Defendants.

        Judge Lawrence Vilardo referred this case to the undersigned for dispositive motions on

March 13, 2018 (Docket No. 48; cf. Docket No. 8, original referral Order).

        Before this Court are a series of related motions.  First, plaintiff moves (again, cf. Docket

No. 32) to compel production, primarily of the prosecution files for the Miguel and Nelson

Camacho murder prosecution and to amend the Scheduling Order (Docket No. 42; cf. Docket

No. 40).  Second, defendants move for summary judgment on absolute and sovereign immunity

grounds (Docket No. 45).  Finally, plaintiff cross-moves for leave to amend the Complaint

(Docket No. 51).  Given the relationship between these non-dispositive motions (Docket Nos.

42, 51) and defendants' dispositive motion (Docket No. 45), this Court considered these motions

together in this Report & Recommendation, rather than a separate Order (or Orders) for the non-

dispositive motions.

        Briefing for those motions was as follows:  responses to plaintiff's motion to compel

(Docket No. 42) were due by February 28, 2018, with replies due March 7, 2018 (Docket

No. 43).  The deadlines of the current Scheduling Order (Docket No. 40) also were held in

abeyance pending resolution of this motion (Docket No. 43).  Defendants responded (Docket

No. 44).  A status conference was held on March 14, 2018 (Docket Nos. 46, 49), where

defendants' summary judgment motion (Docket No. 44) and plaintiff's discovery and other

issues were discussed (Docket No. 49).  Following that conference, responses to defendants'

summary judgment motion (Docket No. 45) were due by April 12, 2018, and replies were due by

April 25, 2018 (Docket No. 50).  Plaintiff indicated at the March 14 conference his intention to

amend the Complaint (Docket No. 49).  This Court gave plaintiff until April 12, 2018, to file that

motion for leave to amend, with responses to that motion also due on April 25, 2018, and replies

to this (and the two pending motions) due on April 30, 2018 (Docket No. 50).  This Court

determined that oral argument of these motions was unnecessary and deemed them submitted as

of April 30, 2018.

## BACKGROUND

This is the action against officials[1] in the Erie County District Attorney's office, former

District Attorneys Frank Clark and (now Justice) Frank Sedita, III; former Assistant District

Attorney (now Erie County Court Judge) Kenneth Case; as well as the Erie County District

Attorney's Office itself (Docket No. 1, Compl.), for the prosecution of plaintiff for the murders

of Nelson and Miguel Camacho.  Plaintiff also filed a parallel action against Buffalo Police

officers involved in the investigation and arrest of plaintiff for the Camacho murders, Ortiz v.

---

[1]This Court notes the passing of Frank Clark on September 22, 2017, as do the parties, see Docket No. 45, Defs. Statement ¶ 7; Docket No. 51, Pl. Memo. at 1; Docket No. 55, Pl. Reply Memo. at 1.  No one has submitted a formal suggestion of death, Fed. R. Civ. P. 25(a)(1), cf. Docket No. 51, Pl. Memo. at 1; Docket No. 55, Pl. Reply Memo. at 1 (citing Rule 25(a)(1), (2)).  Mr. Clark was succeeded in office initially by (now Justice) Sedita, see Fed. R. Civ. P. 25(d).

Wagstaff, No. 16CV321 (hereinafter "Wagstaff").  To distinguish from the present case, this Court will refer to Ortiz v. Case, No. 16CV322, in short hand as "Case" with citations to the docket referring to filings in that case.  Both this case and Wagstaff arise from plaintiff's conviction and subsequent exoneration from the Camacho murders, with plaintiff alleging that he was wrongfully conviction and imprisoned, as well as state law claims for malicious prosecution.

On or about November 11, 2004, Miguel and Nelson Camacho were murdered (Docket No. 45, Defs. Statement ¶ 9).  On or about November 16, 2004, plaintiff was questioned, admitted killing the Camacho brothers, and was arrested (id. ¶ 10).  Plaintiff plead guilty to the murders of the Camacho brothers.  Plaintiff alleges that defendant then-District Attorney Frank Sedita, III, failed to accept proof that plaintiff was wrongfully convicted.  Plaintiff argues that this willful refusal led plaintiff to be incarcerated for ten years (e.g., Docket No. 1, Compl. ¶ 54), including the period from November 2012 (after the commencement of the federal prosecution described below) until his formal exoneration in May 2015.

*Federal Prosecution*

Meanwhile, the Federal Bureau of Investigation and the U.S. Attorney's office conducted an investigation of the 10th Street and 7th Street gangs, learning that three other men were responsible for the Camacho murders, see United States v. Montalvo, et al., No. 11CR366 (hereinafter "Montalvo"), Docket No. 68, Superseding Indict. (dated Nov. 8, 2012, filed Nov. 16, 2012) (see Docket No. 1, Compl. ¶ 25).  In Montalvo, defendants Misael Montalvo, Efrain Hidalgo, and Brandon Jonas eventually were charged with discharging a firearm causing the deaths of Nelson and Miguel Camacho, Montalvo, supra, Docket No. 68, Superseding Indict., Counts 2, 3, Special Findings.  Montalvo (Montalvo, Docket No. 249, Mar. 16, 2015), Hidalgo

3

(<u>Montalvo</u>, Docket No. 239, Feb. 26, 2015), and Jonas (<u>Montalvo</u>, Docket No. 244, Mar. 11, 2015) each entered guilty pleas.  Hidalgo (<u>Montalvo</u>, minute entry, Feb. 26, 2015) and Jonas (<u>Montalvo</u>, minute entry Mar. 11, 2015) pled guilty to Count 2 of the Superseding Indictment (<u>Montalvo</u>, Docket No. 68), admitting to discharging a firearm causing death, with a special finding that the victims were the Camacho brothers (<u>id.</u>).

Pursuant to Judge Richard Arcara's Orders, <u>In re May 2011 Grand Jury Impaneled May 6, 2011</u>, Misc. No. 13MR17, Order of Nov. 8, 2012; <u>id.</u>, Order of Mar. 7, 2013, the Government provided information of plaintiff's innocence first to the Erie County District Attorney and then to plaintiff's criminal counsel (the late John Nuchereno).  These Orders released federal Grand Jury minutes and material to those attorneys, showing the involvement of the <u>Montalvo</u> defendants in the Camachos' murders.  The second Order expressly released a copy of the Grand Jury materials to plaintiff's criminal defense counsel, Mr. Nuchereno, <u>In re May 2011 Grand Jury Impaneled May 6, 2011</u>, Misc. No. 13MR17, Order of Mar. 7, 2013.  On April 23, 2013, plaintiff filed a 440 Motion ("440 Motion") to dismiss plaintiff's Indictment (Docket No. 1, Compl. ¶ 29) which was granted in May 2015 (despite defendants' initial opposition, <u>id.</u> ¶¶ 38, 32-37).

The next year, plaintiff commenced the <u>Case</u> and <u>Wagstaff</u> actions (<u>e.g.</u>, Docket No. 1, Compl.).  Defendants answered in <u>Case</u> (Docket No. 7), asserting (among various defenses) absolute immunity (<u>id.</u> ¶ 18), Eleventh Amendment sovereign immunity (<u>id.</u> ¶ 19), and qualified immunity (<u>id.</u> ¶ 17).

*Plaintiff's Initial Motion to Compel (Docket No. 32)*

Plaintiff moved to compel (Docket No. 32) which this Court denied in part (Docket No. 36).  He sought production of the prosecution files that may have come from investigation of the Camacho murders, both from plaintiff's case and from the subsequent federal prosecution (including possible materials from the federal Grand Jury disclosed to the Erie County District Attorney pursuant to release Orders of Judge Richard Arcara).  This Court (Docket No. 36, Order of June 23, 2017, at 14-15), Ortiz v. Case, No. 16CV322, 2017 WL 2720087, at *7 (W.D.N.Y. June 23, 2017) (Scott, Mag. J.), denied plaintiff's motion in part because plaintiff had not objected to defense production prior to filing his motion.  This Court authorized some production based upon an in camera inspection of the police investigative files provided in Wagstaff (id. at 15-16), Case, supra, 2017 WL 2720087, at *7.  Finally, this Court did not (and could not) alter Judge Arcara's Orders regarding the federal Grand Jury materials released to the prosecution defendants (id. at 16-18), 2017 WL 2720087, at *8.

*Plaintiff's Second Motion to Compel and Amend the Scheduling Order (Docket No. 42)*

Plaintiff now complains that defendants still have not produced the investigation and prosecution files of the Camacho murders save motion papers responding to plaintiff's 440 Motion and 104 additional pages following the first motion to compel Order (Docket No. 42, Pl. Memo. at 2).  Plaintiff claims defendants agreed to provide additional documents (id. at 2, 3; id., Pl. Atty. Decl. ¶ 12).  Plaintiff believes that defendants know what items in their files are not from the federal Grand Jury and could be produced (id., Pl. Memo. at 2-3).  Plaintiff also indicates that he might have to move before either Judges Arcara or Vilardo to modify Judge Arcara's Orders producing the federal Grand Jury materials (id. at 3).  Plaintiff also seeks to

amend the Scheduling Order to extend the deadline for filing motions to amend the pleadings and subsequent deadlines (id. at 3-6; id., Pl. Atty. Decl. ¶ 17). This Court later held the schedule in abeyance pending disposition of this motion (Docket No. 43; see Docket No. 46).

Defense counsel filed a declaration in opposition to this motion, pointing out defense production following plaintiff's first motion to compel (Docket No. 44, Def. Atty. Decl. ¶ 7; see Docket No. 42, Pl. Atty. Decl., ¶ 7, Ex. 4, defense production). Noting that plaintiff never objected to defense production, defendants argue that plaintiff disregards rules for discovery and motion practice. Plaintiff here merely makes blanket demands for production of the entire prosecution file. (Docket No. 44, Def. Atty. Decl. ¶¶ 8, 9.) Defendants consistently objected to production of that entire file, raising objections and asserting privileges against their production (id. ¶ 10) but plaintiff never addressed these objections or privileges in his latest motion to compel (id. ¶ 11). Plaintiff also did not attempt to resolve this issue prior to filing this motion or certify to any good faith attempt at such a resolution (id. ¶ 12; see also id. ¶ 13 (motion should not be heard pursuant to W.D.N.Y. Loc. Civ. R. 7(d)(3) [sic], (d)(4)). Had plaintiff specified which discovery required further or supplemental response, defendants could advise whether additional documents exist (id. ¶ 14).

*Defense Motion for Summary Judgment (Docket No. 45)*

Within a week of responding to plaintiff's latest motion, defendants moved for summary judgment, arguing that they should enjoy absolute immunity (Docket No. 45, Defs. Memo. at 6-7, 7-8 (absolute immunity for initial prosecution of plaintiff), 9-12 (absolute immunity for handling of plaintiff's 440 motion)). They also claim absolute immunity for defendant District Attorney from claims arising from failure to train or supervise Assistant District Attorneys (id. at

12-13).  They also argue Eleventh Amendment immunizes them from claims against them in

their official capacities (id. at 13-14).  They also argue that defendant Erie County District

Attorney's Office is not a suable entity since it lacks an independent existence from the County

of Erie to give it separate capacity to be sued (Docket No. 45, Defs. Statement ¶ 8; id., Defs.

Memo. at 14), Michels v. Greenwood Lake Police Dep't, 387 F. Supp. 2d 361, 367 (S.D.N.Y.

2005); Gonzalez v. City of N.Y., No. 98 CIV. 6081(MBM), 1999 WL 549016, at *1 (S.D.N.Y.

July 28, 1999) (under New York law, the Office of District Attorney does not have a legal

existence separate from the District Attorney).  Finally, defendants deny that plaintiff alleges a

Monell supervisory claim against them in the original complaint (id. at 14-15), cf. Monell v.

Department of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978).

From defendants' statement of material facts (id.) (generally unopposed by plaintiff (cf.

Docket No. 51, Pl. Response to Defs. Statement of Material Facts)), on or about November 11,

2004, Nelson and Miguel Camacho were murdered (Docket No. 45, Defs. Statement ¶ 9).  On or

about November 16, 2004, Buffalo Police officers questioned plaintiff; plaintiff admitted his role

in killing the Camachos (id. ¶ 10; id., Sedita Decl. ¶ 5, Ex. A).  Plaintiff was arrested and later

indicted for murder and burglary (Docket No. 45, Defs. Statement ¶¶ 11, 12).  Following the

Indictment, there were competency evaluations and hearings, motion practice, and plea

negotiations until plaintiff pled guilty on March 22, 2006, to two counts of first-degree

manslaughter (id. ¶¶ 13-14).  Plaintiff was sentenced on or about June 16, 2006, to twenty-five

years in prison (id. ¶ 15).

Sometime in 2011, a federal Grand Jury convened to investigate gang activity in the City

of Buffalo (id. ¶ 16).  The Erie County District Attorney's office denied involvement in this

investigation (id. ¶ 17; see Docket No. 51, Pl. Response Statement ¶ 17 (admitting this statement)).  On or about July 21, 2011, plaintiff testified before that Grand Jury and again admitted killing the Camachos (Docket No. 45, Defs. Statement ¶ 18; see Docket No. 51, Pl. Response Statement ¶ 18 (admitting this statement)).  On or about September 13, 2012, plaintiff appeared again before that Grand Jury but this time he denied involvement in the murders (Docket No. 45, Defs. Statement ¶ 19; see Docket No. 51, Pl. Response Statement ¶ 19 (admitting this statement)).  On November 16, 2012, then-United States Attorney William Hochul announced the Indictment of Hidalgo, Jonas, and Montalvo for the murders of Nelson and Miguel Camacho (Docket No. 45, Defs. Statement ¶ 20).  The United States Attorney's office provided "certain information regarding their investigation" to the Erie County District Attorney's office (id. ¶ 21); plaintiff denies that his then-defense counsel, John Nuchereno, received this information (Docket No. 51, Pl. Response Statement ¶ 21; but cf. Docket No. 45, Defs. Statement ¶ 21).  The United States Attorney furnished this information pursuant to Judge Arcara's Orders (Docket No. 45, Defs. Statement ¶ 22).  Plaintiff filed a 440 Motion to vacate his conviction (id. ¶ 23), with the parties disputing the primary basis for the motion (compare id. ¶ 24 with Docket No. 51, Pl. Response Statement ¶ 24) and the grounds for the People's opposition to the motion (compare Docket No. 45, Defs. Statement ¶¶ 25, 27 with Docket No. 51, Pl. Response Statement ¶¶ 25, 27).  While the 440 Motion was pending (see Docket No. 45, Defs. Statement ¶¶ 25-39), the United States Attorney's office advised the District Attorney's office that a proffer has been held and Efrain Hidalgo admitted to the murders of Nelson and Miguel Camacho (id. ¶ 39)).  Defendants contend that a subsequent proffer session on November 25, 2014, was the first and only time they met with Hidalgo (id. ¶¶ 40, 41); plaintiff, however,

denies that this was their only meeting (Docket No. 51, Pl. Response Statement ¶ 41).  Plaintiff

also denies that a December 8, 2014, meeting with him was the "first and only" held with the

defendants (id. ¶ 42; but cf. Docket No. 45, Defs. Statement ¶ 42).  On December 8, 2014,

defendants withdrew the People's opposition to plaintiff's 440 Motion and plaintiff was released

from state prison the next day (Docket No. 45, Defs. Statement ¶¶ 43, 44).

Defendant Case was the lead prosecutor in the Camacho case (Docket No. 45, Case Decl.

¶ 6).  As lead prosecutor, then-Assistant District Attorney Case evaluated the evidence obtained

by the Buffalo Police Department.  He claims that he did not conduct an investigation of the

Camacho murders, contending that no one in the District Attorney's office obtained plaintiff's

statement or his arrest (id. ¶ 7).  Case left the District Attorney's office in June 2007 and became

a state court judge in 2011 (id. ¶¶ 1, 14); he was not involved in the subsequent investigation of

the Camacho murders (id. ¶¶ 14, 15, 16) or opposition to plaintiff's 440 Motion (id. ¶ 18).

Defendant Sedita was the District Attorney from January 2009 until December 31, 2005,

after being chief of the Homicide Bureau in the District Attorney's office at the time of the

Camacho murders (Docket No. 45, Sedita Decl. ¶¶ 1, 2, 4).  Sedita also denies any role in

investigating the Camacho murders and contends that the District Attorney's office merely acted

as prosecutors in the matter (id. ¶ 9).  Sedita notes that on December 21, 2007, the Appellate

Division of New York State Supreme Court affirmed plaintiff's conviction, specifically holding

that plaintiff was mentally fit to proceed (id. ¶ 10, Ex. E).  He also notes that plaintiff repeated

his admission to killing the Camachos six times between 2004 and 2011 (id. ¶¶ 11, 12-15, Exs.

F, G (instances of admission by plaintiff)).  Sedita contends that any information his office later

obtained from the United States Attorney was forwarded to plaintiff's criminal defense counsel,

Nuchereno (id. ¶ 18).  Sedita also claims that plaintiff's 440 Motion was based upon the federal investigation and eventual indictment of Hidalgo, Montalvo, and Jonas (id. ¶ 20).  Sedita contends that the office's meeting with Hidalgo on November 25, 2014, and with plaintiff on December 4, 2014, were the first times for that office (id. ¶¶ 37, 38).

Plaintiff submits, as a counterstatement of facts, that the administrative and investigative activities of defendants were not entitled to Eleventh Amendment or absolute immunity and activities occurring after plaintiff's conviction in December 2007 and prior to court proceedings should not enjoy Eleventh Amendment or absolute immunity (Docket No. 51, Pl. Response Statement ¶¶ 45, 46).

Although defendants have not moved for a protective Order, they filed their motion after plaintiff noticed the deposition of defendants Sedita and Case (among others, see Docket No. 51, Pl. Atty. Decl. Ex. 1; id., Pl. Memo. at 1).

In response to defendants' motion, plaintiff first concedes that the Office of District Attorney is not a suable entity and should be dismissed (Docket No. 51, Pl. Memo. at 2).  He argues that the rest of the motion for summary judgment should be denied because plaintiff contends he needs discovery before he could oppose that motion (id. at 2-4).  He further alleges that he stated civil rights claims against defendants Clark, Sedita, and Case for their investigative and administrative actions that should deny them absolute immunity or Eleventh Amendment immunity (id. at 2, 4-16).  Plaintiff needs to test the credibility and contentions of remaining defendants Sedita and Case before he can address their motion for summary judgment (id. at 2-4, 15-16), see Fed. R. Civ. P. 56(d), noting the filing of this motion in the midst of the noticed depositions of these parties and other Assistant District Attorneys (id.).  He argues that

defendants, when sued in their official capacity, enjoy only Eleventh Amendment immunity and not absolute immunity, which applies (if at all) for suit against them in their individual capacities (id. at 4-5).

Next, plaintiff contends that defendants are not entitled to absolute immunity for their investigative or administrative functions (id. at 5-15), conceding that absolute immunity applies for a prosecutor deciding whether to commence a prosecution, negotiate pleas, decide whether and to what extent to charge a suspect (id. at 5-6). He argues that establishment of "office policy," however, is outside of that immunity (id. at 6). Plaintiff also claims that absolute immunity does not apply to the prosecution giving legal advice to law enforcement agencies as to acceptable investigative techniques; supervision of law enforcement; orchestrating sting operations, authorizing wiretaps, and similar fact gathering devices (id. at 8). Plaintiff's claims (as implied in the Complaint and expressly proposed in the Amended Complaint) of Monell supervisory liability and failure to train he believes fall under the administrative functions and are outside of absolute immunity (id. at 8-10). Plaintiff accepts as true the allegations (discussed below) from Peters v. City of Buffalo, 848 F. Supp. 2d 378 (W.D.N.Y. 2012) (Skretny, Ch.J.), that defendant Clark acted pursuant to a policy to supervise Buffalo Police Department investigations (id. at 10-11). Plaintiff stresses that prosecutors should not enjoy absolute immunity for the investigation following the federal prosecution of the correct suspects (in 2011) and prior to his 440 Motion, arguing that there is no immunity where no criminal proceeding pending (id. at 11-16, 11-12, citing Warney v. County of Monroe, 587 F.3d 113, 121-22 (2d Cir. 2009); Peters, supra, 848 F. Supp. 2d at 386)). Since there was no proceeding between the start of the federal prosecution and plaintiff filing his 440 Motion, defendants' activities were

investigative (id. at 11-12) and they received materials from the United States Attorney's office (id. at 13, 14-15) further reinforcing the investigative nature of these functions. Plaintiff concludes that absolute immunity should not cover defendants' activities in 2011 forward regarding plaintiff's post-conviction motion practice (id. at 11-16).

*Plaintiff's Motion for Leave to Amend (Docket No. 51)*

In addition to his response, plaintiff filed his cross-motion for leave to amend the Complaint (Docket No. 51; see id., Pl. Memo. at 16-18). Aside from some cosmetic changes, plaintiff seeks to add allegations that defendants (as prosecutors) conducted investigations and administered the District Attorney's office relative to plaintiff between November 16, 2004, and June 16, 2006 (Docket No. 52, proposed Am. Compl. New ¶ 22), prior to plaintiff's Indictment and leading to his sentencing. The next significant change plaintiff wants to add is that the United States Attorney's office provided documents to defendant Sedita and the District Attorney's office from November 9, 2012, through December 20, 2013 (id. New ¶ 29). From December 2007 until April 23, 2013, when plaintiff filed his 440 motion and no proceedings were pending, plaintiff alleges that defendants "engaged in investigative and administrative functions relative" to plaintiff's guilt or innocence (id. New ¶ 30). Plaintiff apparently seeks these amendments to overcome defendants' claims of absolute immunity as prosecutors. The Amended Complaint clarifies plaintiff's assertion of Monell liability for policies and customs of the District Attorney's office (id. New ¶ 57). Finally, plaintiff would add that defendants engaged in multiple violations of plaintiff's constitutional rights, with defendants engaged in a pattern of violations that placed defendants on notice of violations (id. New ¶ 58). Plaintiff cites four cases that allegedly placed defendants on that notice (id.) including this Court's decision on

June 23, 2017, addressing plaintiff's first motion to compel, <u>Ortiz v. Case</u>, No. 16CV322, Docket No. 36, 2017 WL 2720087 (W.D.N.Y. June 23, 2017) (Scott, Mag. J.).

Plaintiff argues that the amendments here are timely, that the Scheduling Order was extended at the request of defense, and the timing of the amendment does not prejudice defendants (Docket No. 51, Pl. Memo. at 16-18). He does not address any futility concerns with these amendments.

Defendants first respond that this motion is untimely under the Scheduling Order in this case and (like a similar motion for leave to amend in <u>Wagstaff</u>) should be denied (Docket No. 54, Defs. Memo. at 2-3). They also contend that amendment here is futile (<u>id.</u> at 3-5), in that plaintiff does not allege defendants' involvement in investigating him at any point during the prosecution and post-conviction proceedings (<u>id.</u> at 5-11). Specifically, the period from December 2007 (the affirmance of his conviction) until April 23, 2013 (the filing of the 440 Motion), defendants argue there is no evidence of investigation by the Erie County District Attorney's Office (<u>id.</u> at 8). They claim any review of the United States Attorney's office materials during the end of that period by the District Attorney's office was in preparation for a court proceeding and hence subject to absolute immunity (<u>id.</u>, citing <u>Warney</u>, <u>supra</u>, 587 F.3d at 123). Defendants next contend that the amendment fails to allege a <u>Monell</u> claim since there is not alleged a pattern of constitutional violations (<u>id.</u> at 11-14). They argue that no further discovery is needed prior to deciding their summary judgment motion, that deposing defendants and others "will not change the fact that the Defendants acted only as prosecutors with respect to the Plaintiff" (<u>id.</u> at 14). Additionally, defendants Sedita and Case submitted detailed affidavits in support of the summary judgment motion and denying involvement in investigating plaintiff;

13

hence deposing these officials would be cumulative of the evidence (documents already produced to plaintiff and defense moving papers) (id. at 15).

In reply, plaintiff argues the amendment is not futile, relying on substantive arguments he made opposing summary judgment (Docket No. 55, Pl. Reply Memo. at 2-5). Plaintiff raised Monell supervisory liability claims in the original Complaint as well as proposed in the Amended Complaint. (id. at 3-5.) He contends that there are discovery issues about what investigative or administrative functions were performed by defendants from at least December 2007 (after the Appellate Division affirmed his conviction and no further proceedings occurred) until April 2013 (when he filed the 440 Motion). Plaintiff alleges that defendants' actions during that period were not covered by absolute immunity for in court advocacy. (Id. at 2-3.)

DISCUSSION

I.    Applicable Standards

This Court will address the motions in the reverse order of their filing. First, this Court will consider plaintiff's motion for leave to amend the Complaint (Docket No. 51), then defendants' motion for summary judgment (Docket No. 45), and finally plaintiff's original motion to compel discovery (Docket No. 42). If plaintiff's motion for leave to amend is granted, it will moot defendants' motion for summary judgment based on the original allegations in the Complaint. Plaintiff's discovery also may be altered if his allegations are amended. Additionally, a ground for denying summary judgment is plaintiff's need for discovery before he could respond (see Docket No. 51, Pl. Memo. at 2-4), see Fed. R. Civ. P. 56(d).

A.      Leave to Amend, Fed. R. Civ. P. 15

Under Federal Rule of Civil Procedure 15(a) amendment of pleadings after the time to do so as of right requires either consent of all parties (apparently not present here) or by leave of the Court.  Under Rule 15(a), motions for leave to amend the Complaint are to be freely given when justice requires.  Granting such leave is within the sound discretion of the Court.  Foman v. Davis, 371 U.S. 178, 182 (1962); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'"  Foman, supra, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

B.      Summary Judgment, Fed. R. Civ. P. 56

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party

must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986), the party against whom summary judgment is sought, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

(emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124

(2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).  The opponent

to summary judgment may argue that he cannot respond to the motion where it shows, by

affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition,"

Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The

movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent

submits an opposing statement of material facts as to which it is contended that there exists a

genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement

will be deemed admitted unless specifically controverted by a correspondingly numbered

paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations

to admissible evidence to support the factual statements and all cited authority is to be separately

submitted as an appendix to that statement, id. R. 56(a)(3).

C.    Motion to Compel, Fed. R. Civ. P. 37

Discovery under the Federal Rules is intended to reveal relevant documents and

testimony, but this process is supposed to occur with a minimum of judicial intervention.  See

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure

§ 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense–including the existence,

description, nature, custody, condition, and location of any documents or other tangible things

and the identity and location of persons having knowledge of any discoverable matter."  Fed. R.

Civ. P. 26(b)(1).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if

"the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some

other source that is more convenient, less burdensome, or less expensive."  Under Rule 26(c),

this Court may issue a protective Order to protect a party "from annoyance, embarrassment,

oppression, or undue burden or expense" by not having a proposed disclosure or discovery

device, or conditioning the time and manner of that discovery.  Fed. R. Civ. P. 26(c)(1), (1)(B)-

(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order

compelling discovery, with that motion including a certification that the movant in good faith

conferred or attempted to confer with the party not making the disclosure to secure that

disclosure without court intervention.  Fed. R. Civ. P. 37(a)(2)(A).  Similarly, under Rule 26(c),

prior to obtaining a protective order the movants must certify that they have in good faith

conferred or attempted to confer with the other affected parties in an effort to resolve the dispute

without court intervention, Fed. R. Civ. P. 26(c).  Under Rule 26(c), the Court has power to protect against abuses in discovery.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought.  Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005).  This Court has broad discretion in issuing such a protective order.  Seattle Times, supra, 467 U.S. at 36.

D.   Immunities

Defendants assert two different types of immunity:  prosecutorial absolute immunity and Eleventh Amendment official capacity immunity.  A third source of immunity, qualified immunity (cf. Docket No. 7, Ans. ¶ 17), may have import here as well.

1.   Absolute Prosecutorial Immunity

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity "'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process,"'" Okongwu v. County of Erie, No. 14CV832, 2017 WL 2686454, at *3 (W.D.N.Y. June 22, 2017) (Skretny, J.) (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting in turn Imbler v. Pachtman, 424 U.S. 409, 430 (1976))) (Docket No. 45, Defs. Memo. at 6).  The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity, Okongwu v. County of Erie, No. 14CV832, 2018 WL 1383233, at *3 (W.D.N.Y. Mar. 19, 2018) (Skretny, J.).  The function performed by the prosecutor defines the scope of this immunity, Imbler, supra, 424 U.S. at 430; Warney, supra, 587 F.3d at 121.  Acts of advocacy before a court, or preparation to advocate, are absolutely immune, Imbler, supra, 424 U.S. at 430-31; see Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), while administrative

duties or investigatory functions are not so immune, Imbler, supra, 424 U.S. at 431 n.33;

Buckley, supra, 509 U.S. at 273; Warney, supra, 587 F.3d at 121.  "This protection encompasses

'all of their activities that can fairly be characterized as closely associated with the conduct of

litigation or potential litigation,'" Peters, supra, 848 F. Supp. 2d at 385 (quoting Barrett v. United

States, 798 F.2d 565, 571-72 (2d Cir. 1986)).  As noted by the Second Circuit in Warney, supra,

587 F.3d at 121, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the

prosecutors have carried their burden of establishing that they were functioning as "advocates"

when they engaged in the challenged conduct.'  Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir.

1996)."

Absolute immunity extends from the initiation of a prosecution and presenting a case at

trial, Boria v. Hicks, No. 5:17-CV-00486 (TJM/TWD), 2017 WL 2983304, at *4 (N.D.N.Y.

June 14, 2017) (Dancks, Mag. J.) (id. at 7), through the decision to end it, see Okongwu, supra,

2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision

whether to vacate a conviction, Warney, supra, 587 F.3d at 123 (id. at 9); Peters, supra, 848 F.

Supp. 2d at 387.  Absolute immunity applies in the preparation for the initiation of judicial

proceedings, Warney, supra, 587 F.3d at 122; Parkinson v. Cozzolino, 238 F.3d 145, 152 (2d Cir.

2001) (holding that absolute immunity extends to prosecution work on direct appeals), but not to

investigative duties of a prosecutor, Warney, supra, 587 F.3d at 122; Parkinson, supra, 238 F.3d

at 151.

This immunity, however, does not extend to the prosecutor's "investigative or

administrative acts," Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981); Okongwu, supra,

2017 WL 2686454, at *4.  That is, for "administrative duties and investigative functions

unrelated to a prosecutor's preparation for the initiation of a prosecution or for judicial proceedings," Peters, supra, 848 F. Supp. 2d at 385. The line between litigation or prosecution and investigative or administrative functions "depends chiefly on whether either is pending or in preparation a court proceeding in which the prosecutor acts as an advocate," Warney, supra, 587 F.3d at 123; Peters, supra, 848 F. Supp. 2d at 385. In Peters, then-Chief Judge Skretny listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence, 848 F. Supp. 2d at 386 (citing cases).

Where this functional line drawing is vexing is when the functions occur after conviction, in response to collateral attack of the conviction, Warney, supra, 587 F.3d at 121. After conviction (as plaintiff notes, see Docket No. 51, Pl. Memo. at 12), there is no judicial proceeding for the prosecutor to advocate in or prepare for advocacy. The Second Circuit addressed this in Warney, and held that absolute immunity also "shields work performed during a post-conviction collateral attack, at least insofar as the challenged actions are part of the prosecutor's role as an advocate for the state," id. at 123. In the collateral context, the key is whether the function of the prosecutor at issue is for a pending proceeding or in preparation of a court proceeding in which the prosecutor will act as an advocate, id.

In Warney, plaintiff argued that the prosecutor should not enjoy absolute immunity in the decision to delay producing DNA results for a pending collateral proceeding, id. at 120, 123. The Second Circuit held that the testing, disclosure, and delay in making disclosure of the DNA

20

samples "were integral to and subsumed in the advocacy functions being performed in connection with Warney's post-conviction initiatives," id. at 123, rather than the investigative or administrative functions.  These decisions were deemed to be "exercises of legal judgment made in the 'judicial phase' of proceedings integral to the criminal justice process," id. at 124.  A prosecutor still enjoys absolute immunity in performing an administrative function "if the act is done in the performance of an advocacy function," id. (citing Van de Kamp v. Goldstein, 555 U.S. 335, 343-44 (2009) (failure to produce impeachment material and failure to train assistant district attorneys on subject)).  The Second Circuit held that "the prosecutors' actions here—which could be seen as administrative or investigative—were also integral to the overarching advocacy function of dealing with post-trial initiatives challenging an underlying criminal conviction:  they 'require[d] legal knowledge and the exercise of related discretion.'"  Warney, supra, 587 F.3d at 124.

> 2.    Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI.  Under Hans v. Louisiana, 134 U.S. 1 (1890), and the Eleventh Amendment, federal courts "could not entertain a suit brought by a citizen against his own State, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98 (1984).  Thus, prosecutors as quasi-judicial officers of the State of New York are sued in their official capacity enjoy sovereign immunity under this Amendment, Ying Jing Gan v. City of N.Y., 996 F.2d 522, 535-36 (2d Cir. 1993); Peters, supra, 848 F. Supp. 2d at 384.

3.    Qualified Immunity

Defendants assert qualified immunity in their Answer (Docket No. 7, Ans. ¶ 17) but do not raise it as a ground in their motion for summary judgment.

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Where a prosecutor is performing investigative or administrative functions that do not qualify for absolute immunity, he or she will be entitled only to qualified immunity, Peters,

supra, 848 F. Supp.2d at 387 (citing cases).  As plaintiff notes (Docket No. 51, Pl. Memo. at 5), however, defendants' motion does not assert qualified immunity.

      E.      Capacity to Be Sued and Death of Public Officer Party

The substantive state law dictates whether an entity can be sued, see Fed. R. Civ. P. 17(b); Gonzalez, supra, 1999 WL 549016, at *1.  Under New York law, the district attorney's office does not have a separate legal existence from the District Attorney to render the former suable in this Court, Gonzalez, supra, 1999 WL 549016, at *1 (citing N.Y. Crim. Proc. L. § 1.20(32)).

Rule 25(a) allows for substitution of a deceased party.  A motion to substitute may be made by any party or by the decedent's successor or representative upon the filing and service of a statement noting the death (also known as a suggestion of death).  "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed," Fed. R. Civ. P. 25(a)(1).  This applies to suits against a deceased official in his or her individual capacity, see 6 Moore's Federal Civil Practice § 25.41[4], at 25-62 (3d ed. 2013).  The action continues among the surviving parties, Fed. R. Civ. P. 25(a)(2).

Under Rule 25(d), "an action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." The successor in the office automatically is substituted, with this Court ordering that substitution at any time, "but the absence of such an order does not affect the substitution," id., R. 25(d).

II.     Leave to Amend

This Court first addresses plaintiff's cross-motion for leave to amend (Docket No. 51). Plaintiff seeks to amend the Complaint to overcome defendants' absolute immunity defense

(asserted in their motion for summary judgment), alleging that defendants had investigative or administrative roles in prosecuting plaintiff (including resisting his post-conviction 440 Motion).

A.    Timeliness

Plaintiff argues that, despite the Scheduling Order deadline, this motion is timely because the extensions of that schedule were due to defendants and the seeking of the prosecution file in the Camacho prosecution in discovery. Defendants remind this Court of the decision against this very plaintiff in Wagstaff denying his request there to amend the Complaint after time expired (Docket No. 54, Defs. Memo. at 2-3).

The original Scheduling Order (Docket No. 11) had motions for leave to amend due by October 26, 2016. The Amended Scheduling Order was entered on December 13, 2017 (Docket No. 40) and did not revive or extend that now passed deadline. As in Wagstaff, plaintiff makes this request months after that initial deadline had passed. In Wagstaff, this Court considered both the timeliness of the proposed amendment (Wagstaff, No. 16CV321, Docket No. 44, Report & Rec. at 18-23, objections pending, No. 47) and the futility of the amendment (Wagstaff, Docket No. 44, Report & Rec. at 23-32), concluding that if timely several of plaintiff's amended claims would survive a futility or prejudice test (id. at 32). Absent plaintiff's request to extend the deadline for leave to amend or to reopen that deadline after its passage, this Court denied leave to amend on timeliness grounds (id.). As in this case, Wagstaff's motion was filed after defendants moved to dismiss, so the decision on plaintiff's motion for leave to amend was framed as a recommendation rather than complete disposal of that motion (id.). Plaintiff objected to this Report & Recommendation (Wagstaff, Docket No. 47) and that motion remains pending.

Plaintiff here seeks to extend or revive the amended pleading deadline in his motion to compel and amend the Scheduling Order (Docket No. 42, Pl. Atty. Decl. ¶ 17). The nature of this case would change if this Court allows amendment; plaintiff can develop his already alleged Monell claims and assert that actions by those defendants were not immune from suit.

As noted in Wagstaff, Scheduling Order deadlines are to provide an orderly procedure for pretrial activities (see Wagstaff, Docket No. 44, Report & Rec. at 19). As this Court there discussed (id.),

> "Under Rule 16, the required content of a Scheduling Order is to limit time 'to join other parties, amend the pleadings, complete discovery, and file motions,' Fed. R. Civ. P. 16(b)(3)(A); see W.D.N.Y. Loc. Civ. R. 16(b)(4), in that order. This Court presumes in issuing the Scheduling Order that claims and parties will be resolved well before the discovery and dispositive motion deadlines; otherwise, defendants will be conducting discovery and ultimately litigating a moving target of evolving claims."

(see also Docket No. 54, Def. Memo. at 3).

Plaintiff points to the Amended Scheduling Order (Docket No. 40) as additional grounds supporting leave to amend the Complaint (Docket No. 55, Pl. Reply Memo. at 2). That Amended Scheduling Order did not revive or extend the October 28, 2016, deadline for motions for leave to amend. That amended schedule merely reset and extended discovery deadlines and subsequent events (Docket No. 40).

In scheduling the present motions, this Court held that Amended Scheduling Order (Docket No. 40) deadlines in abeyance (Docket No. 43) but again that Amended Scheduling Order did not alter the deadline for motions for leave to amend that has passed. Even under the liberal leave for amendment under Rule 15(a)(2), plaintiff is too late seeking these amendments (see also Wagstaff, Docket No. 44, Report & Rec. at 19). The deadline for motions for leave to

amend was October 26, 2016 (Docket No. 11), and plaintiff filed this cross-motion for leave on April 12, 2018 (Docket No. 51), almost a year and a half later, while seeking to amend the Scheduling Order on February 9, 2018 (Docket No 42), just two month prior.  Leave to amend the substance proposed by plaintiff (save elimination of the Erie County District Attorney's office as a defendant—to which all parties agree to) **should be denied** because the motion is untimely.  So much of plaintiff's motion (Docket No. 42) to amend the Scheduling Order to allow this motion for leave to amend is **denied**.

Finally as in <u>Wagstaff</u> (Docket No. 44, Report & Rec. at 21, <u>on objection</u> Docket No. 47), plaintiff's cross motion for leave to amend opposes defendants' motion for summary judgment. Judge Vilardo should render the final disposition of these interrelated motions.  Therefore, this Court addresses the otherwise non-dispositive pretrial motion for leave to amend in this Report and Recommendation as a recommended disposition.

B.    Futility

Defendants alternatively argue that the substantive amendments would be futile because plaintiff fails to state a claim regarding his new allegations (Docket No. 54, Defs. Memo. at 3-5).

Plaintiff claims that his Amended Complaint "asserts a pattern of <u>Brady</u> and other constitutional violations that placed DA Clark and DA Sedita on notice of the need for training based on the many section 1983 actions for such constitutional violations by the DA's Office during the tenure of Clark and Sedita," (Docket No. 51, Pl. Memo. at 9-10).  He cites four cases as examples that arose during their tenures that showed the need for training.  In <u>Mixon v. Sedita</u>, 757 F. Supp. 2d 229 (W.D.N.Y. 2010) (Larimer, J.), plaintiff (proceeding <u>pro se</u>) alleged that defendant Sedita violated his rights in not releasing DNA evidence that plaintiff believed would

exonerate him, id. at 230. Defendant moved to dismiss for failure to state a claim, id. at 230, 231 (arguing claim was time barred and failed to allege personal involvement by Sedita), which was granted, id. at 230, 231. In addition to accepting the statute of limitations defense, Judge Larimer also held that plaintiff's constitutional claims were not plausible because there was "no freestanding constitutional right to DNA evidence," id. at 232.

In Peters v. City of Buffalo, supra, 848 F. Supp. 2d 378 (W.D.N.Y. 2012) (Skretny, Ch.J.), plaintiff Lynn Dejac Peters alleged constitutional violations from the investigation and prosecution for the murder of Crystallynn Girard, id. at 381. Plaintiff alleged that defendant Clark and others in the District Attorney's office acted pursuant to a policy, practice, and custom of the City of Buffalo and its Police Department to permit the District Attorney's office to direct and control investigations and for the District Attorney's office to do so, id. at 382. Defendants moved to dismiss invoking Eleventh Amendment, absolute prosecutorial, and qualified immunities, id. at 381, 383, 384, but this Court denied the motion, id. at 382, 385-87. Plaintiff argued that Clark "stepped into the shoes of investigating police officers and thus acted outside their prosecutorial roles," id. at 384, 386. Accepting plaintiff's allegations in this motion to dismiss, Chief Judge Skretny held that Clark's activities before Peters' indictment was outside the scope of his prosecutorial role, id. at 386.

Plaintiff cites the decision of this Court on his motion to compel in this case, Ortiz v. Case, supra, 2017 WL 2720087 (Docket No. 51, Pl. Memo. at 10), as an example of notice to defendants for the need to train. That Order was based upon the original Complaint in this action. This case obviously cannot provide notice for defendants to train prior to commencing this action.

Finally, plaintiff gives the example of Okongwu v. County of Erie, supra, 2018 WL 1383233, where defendant Erie County moved unsuccessfully to dismiss, id. at *1.  Prior to this motion, this pro se case was screened and other defendants, including the District Attorney and Assistant District Attorneys, were dismissed on absolute prosecutorial immunity grounds, 2017 WL 2686454 (see Docket No. 45, Defs. Memo. at 6); Okongwu, supra, 2018 WL 1383233, at *1, 3 (remaining claims from alleged unconstitutional acts of Sheriff and not District Attorney).

It is unclear how defendants received notice of constitutional violations from these cited cases that would require further training of staff from dismissed actions.  The only notice these defendants had here is that they were sued (frequently) for the conduct of prosecutors on different constitutional claims.  At best, one action, Peters, gave these defendants notice that training may be required.  That case involved the prosecutors directing the investigation more affirmatively than plaintiff alleges occurred here, cf. Peters, supra, 848 F. Supp. 2d at 386-87 (cf. Docket No. 1, Compl. ¶¶ 17-21).  Peters also was decided on a motion to dismiss—in which plaintiff's allegations were assumed to be true for purposes of that motion only, see id. at 383, 386—and was not an ultimate adjudication of the merits of plaintiff's claim.[2]

Even if these cases provide prior notice to defendants to expect a claim for failure to train Assistant District Attorneys, absolute immunity includes claims based upon the District Attorney's failure to train his assistants or failure to supervise them adequately, Van de Kamp, supra, 555 U.S. at 344 (Docket No. 45, Defs. Memo. at 12).

---

[2]The parties in Peters action settled and plaintiff filed a Stipulation of Dismissal, Peters v. City of Buffalo, et al., No. 10CV953S, Docket Nos. 188, 181.

Plaintiff argues that defendants claim he failed to submit evidence in opposition to their summary judgment motion and that argument is not applicable to his cross-motion for leave to amend the Complaint (Docket No. 55, Pl. Reply Memo. at 2). Defendants did argue in support of their motion for summary judgment (Docket No. 54, Defs. Memo. at 7) and not in response to plaintiff's cross-motion for leave to amend. Both sides rely upon the totality of their arguments in support of the ultimate relief each side seeks (e.g., Docket No. 54, Defs. Memo. at 2 (reasons there and in the motion for summary judgment entitled defendants to dismissal of the original Complaint or denial of leave to amend it); Docket No. 55, Pl. Reply Memo. at 2 (incorporating opposition arguments to defense motion as support for cross-motion for leave to amend)). This Court, in discussing these motions together, recognizes their interrelationship. Defendants, however, set forth distinct arguments against granting leave to amend and in favor of summary judgment and those arguments against leave to amend did not rely upon plaintiff's failure to provide evidence to support the proposed amendments (see Docket No. 54, Defs. Memo. at 3-5).

In this case, the application of absolute immunity to post-conviction functions of defendant prosecutors arises in two contexts. Plaintiff opposes summary judgment because he seeks to depose defendants (and others) as to their functions prior to and during the commencement of his 440 Motion, and concludes he cannot respond to defendants' motion without obtaining this discovery. Next, assuming the record is sufficient for this Court to address summary judgment, the issue is whether defendants should enjoy absolute immunity as a matter of law for their functions prior to and during the pendency of the 440 Motion. This Court approaches these issues in this order because Rule 56 requires an assessment whether the

opponent to the summary judgment motion can respond without further discovery before it reaches the ultimate question of whether judgment should be entered in movants' favor.

On the underlying substance of applying absolute immunity to defendants' functions, defendants' actions throughout the post-conviction period at issue should be **subject to absolute immunity**.  When United States Attorney produced information about what eventually became the Montalvo prosecution to the Erie County District Attorney's office on November 16, 2012 (but prior to plaintiff filing his 440 Motion), the prosecutors had within their advocacy function the "continuing ethical obligation to disclose exculpatory information discovered post-conviction" and the duty to seek plaintiff's exoneration and confess error to correct an erroneous conviction, see Warney, supra, 587 F.3d at 125 & n.15 (citing ABA Model Rules of Prof. Conduct R. 3.8(g), (h)).  Although these functions are administrative and investigatory (especially absent a pending or potential court proceeding), these functions, as held by the Warney court, were integral to the overarching function of dealing with post-conviction initiatives and involve the application of legal knowledge and the exercise of legal discretion, id. at 124.  Ironically, the very duty plaintiff claims defendants failed to follow (Docket No. 1, Compl. ¶¶ 47-48, Brady violations)—this continuing obligation to disclose exculpatory information and to seek plaintiff's exoneration—is the basis for their absolute immunity.

Plaintiff disregards the holding of Warney that "the prosecutors are entitled to absolute immunity in this lawsuit," 587 F.3d at 125, where exculpatory materials were withheld for at least 72 days in post-conviction proceedings, id.  These prosecutors were immunized as if they failed to produce similar Brady materials at trial, id. ; see Jones v. Shankland, 800 F2d 77, 80 (6th Cir. 1986) (prosecutor's "non-disclosure of exculpatory information [is] certainly entitled to

absolute immunity") (cited favorably in Warney, supra, 587 F.3d at 125). The Second Circuit in Warney found that affording absolute immunity to prosecutors "does not depreciate the duty of prosecutors to prevent unjust imprisonment. Indeed, absolute immunity is afforded in part because we conclude that the duty is a part of the prosecutor's advocacy function," 587 F.3d at 125. The court recognized that, in extreme cases, the prosecutors may be subject to criminal liability, id. (quoting Imbler, supra, 424 U.S. at 428-29 (criminal liability for prosecutor's willful acts)).

　　　　Plaintiff argues that the period between the affirmance of his conviction (in December 2007) until he filed his 440 Motion (in April 2013) there was no pending proceeding for prosecutors to either prepare for advocacy or to advocate, thus no basis for immunity (Docket No. 55, Pl. Reply Memo. at 5; see Docket No. 52, proposed Am. Compl. New ¶ 3). Instead, defendants investigated or conducted administrative activities that should not be immunized (Docket No. 55, Pl. Reply Memo. at 5). Plaintiff does not allege defendants' activities from 2007 to 2011, when the federal investigation identified other suspects in the Camacho murders. Arguably, between 2007 and 2011 is a period when no criminal proceedings were pending. This Court concedes that plaintiff does not know the extent of defendants' activities during this period (or beyond until 2013). Hence, plaintiff's discovery demands are the subject of his pending motion to compel (Docket No. 42) and resisting providing a response to the summary judgment motion (see Docket No. 51, Pl. Memo. at 15-16). But for the prosecutors' continuing obligation to produce exculpatory information, this first period would not be one for preparation for prosecution advocacy. This obligation, however, renders that period advocacy. In addition, immediately prior to and upon commencement of that 440 Motion in this case in 2013,

defendants' activities were in preparation for advocacy including their continuing duty to provide exculpatory material, see Warney, supra, 587 F.3d at 125. Thus, the administrative and investigative actions of this period were integral to the overarching advocacy function for which they are immunized absolutely, id. at 124. This Court disagrees with plaintiff's contention (cf. Docket No. 55, Pl. Reply Memo. at 3) and finds that defendants' functions from 2007 to 2013 prior to the 440 Motion were advocacy.

This amendment, therefore, is **futile** given the scope of defendants' absolute immunity. Plaintiff's motion for leave to amend (Docket No. 51) should be **denied**.

C.    The Late Frank Clark

One change not addressed in plaintiff's proposed amended pleading is the death of Frank Clark. Plaintiff argues that until defendants file a formal suggestion of death, nothing should be done to the allegations against the late Frank Clark, the former District Attorney (Docket No. 55, Pl. Reply Memo. at 1). Clark was sued individually and in his official capacity (Docket No. 1, Compl. at 1 (caption); see Docket No. 52, proposed Am. Compl. at 1 (caption)). Rule 25(d) governs the latter status and defendant Frank Sedita automatically replaced Clark in the official capacity. As for Clark in his individual capacity, plaintiff does not seek to amend the Complaint to note his death or seek to substitute anyone else for Clark (cf. Docket No. 52, proposed Am. Compl.).

What could happen with individual capacity claims against Clark as alleged in the original Complaint is addressed below.

III.    Summary Judgment

A.    Office of District Attorney

As plaintiff concedes (Docket No. 51, Pl. Memo. at 2), the District Attorney's office is not a legal entity that can be sued.  Plaintiff's proposed Amended Complaint (Docket No. 52) would eliminate that office as a defendant (see id.).  Therefore, it should be **dismissed from this case** (by granting leave for the limited basis to amend the Complaint to eliminate that defendant or by recommending grant of defendants' motion for summary judgment as to that party).  Defense motion for summary judgment (Docket No. 45) on this part should be **granted**.

B.    Discovery

Plaintiff invokes Rule 56(d) and argues that summary judgment is premature since he had not had the opportunity to depose defendants and other witnesses.  Just prior to defendants filing their motion, plaintiff sought to depose defendants Sedita and Case and at least one Assistant District Attorney, Donna Milling (Docket No. 51, Pl. Atty. Decl. ¶¶ 3, 8).

In Stein v. Disciplinary Board of Supreme Court of New Mexico, No. CIV 04-0840 JB/DJS, 2006 WL 4079023, at *1 (D.N.M. May 31, 2006), defendants (state attorney disciplinary board and its members) moved for summary judgment and to dismiss on absolute and qualified immunity grounds, while plaintiffs (a lawyer and his firm) requested limited discovery concerning these immunity defenses during the pendency of that motion.  The court denied plaintiffs' discovery request (seeking the "who, how, when, and why" of disciplinary proceedings against plaintiff by defendant), id. at *3. After finding that defendant were entitled to absolute immunity, the court concluded that "the requested discovery does not affect that decision," id., noting that "even if the Plaintiffs received answers to their questions, the Court

33

concludes that the Defendants would still be entitled to absolute prosecutorial immunity and absolute judicial immunity. Discovery is therefore not necessary or appropriate," id.; see also Maples v. County of Macomb, No. 06-14775, 2007 WL 2421520, at *1 (E.D. Mich. Aug. 24, 2007) (Whalen, Mag. J.) (rendered Report & Recommendation on prosecutorial immunity did not depend upon discovery, denying plaintiff's motion to compel discovery). Other courts have stayed discovery during the pendency of a motion to dismiss on prosecutorial immunity grounds, Chow v. State of Mich., 165 F.3d 26 (Table), 1998 WL 598775 (6th Cir. 1998) (per curiam).

Some courts have ordered limited discovery for a claim of prosecutorial immunity, Michel v. Wicke, Civil Action No. 10-3892 FSH, 2011 WL 3163236, at *3 (D.N.J. July 25, 2011) (Attorney General's role in civil commitment proceedings, deemed to be prosecutorial; court directing immediate discovery limited to immunity).

The timing of when the prosecution commences (hence when absolute immunity takes hold) may lead to discoverable fact issues, see Knox v. County of Ulster, No. 1:11-cv-0112, 2013 WL 286282, at *8, 17 (denying defense motion to dismiss on absolute immunity grounds at that time and ordering discovery) (N.D.N.Y. Jan. 24, 2013). Plaintiff proposed to allege pre-Indictment activities by defendants in directing the investigation that led to the Indictment (Docket No. 52, Proposed Am. Compl. New ¶ 22). The original Complaint (cf. Docket No. 1, Compl. ¶¶ 17-21), however, does not allege any prosecution pre-Indictment functions. This differs from the allegations in Peters, supra, 848 F. Supp. 2d at 382, where that plaintiff alleged that the District Attorney directed and controlled the police investigation. Here, from the Indictment to plaintiff's conviction, defendants' activities were advocacy in nature or in preparation for advocacy and not administrative or investigative that would preclude absolute

34

immunity.  Discovery from defendants or defense-controlled witnesses would not amplify this issue.

The closer question is about the defendants' activities post-conviction up to plaintiff filing his 440 Motion (see Docket No. 51, Pl. Memo. at 11), Warney, supra, 587 F.3d at 121; Peters, supra, 848 F. Supp. 2d at 387; see also Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (Miner, J.).  As noted in the cases, "drawing this line between 'advocacy' and 'investigative' functions is vexed, perhaps no more so than in the post-conviction context," Warney, supra, 587 F.3d at 121.  Both sides argue Warney supports their opposing views regarding absolute immunity for the pre-440 Motion and 440 Motion activities of the prosecutors.  Are these prosecution activities fact investigations, as plaintiff apparently contends, which requires discovery to flesh out prior to disposing of the summary judgment motion or are these activities in preparation for a court proceedings (the later filed 440 Motion) that qualify for absolute immunity as defense contends?  As held in Warney, supra, 587 F.3d at 122-25, administrative or investigative activities related to ultimate advocacy for post-conviction proceedings is deemed advocacy or preparation for advocacy and hence is immune.  Therefore, discovery as to what was done during this period would not aid plaintiff in responding to defendants' motion for summary judgment.

Defendants also argue that deposing them (and other witnesses) would be cumulative of discovery already produced to plaintiff (Docket No. 54, Def. Reply Memo. at 14-15).  This Court agrees.  Defendants' immunity does not require further factual investigation.  Plaintiff can contest (as he has, Docket No. 51, Pl. Memo. at 12) the legal question of the application of

absolute immunity to defendants' post-conviction functions especially those prior to the filing of plaintiff's 440 Motion without further discovery.

C.    Absolute Immunity

This Court next turns to the immunity grounds cited by defendants for dismissal of claims against them.  Plaintiff argues that defendants, when sued in their official capacities, can enjoy only Eleventh Amendment sovereign immunity and not absolute immunity as prosecutors; rather, the absolute immunity applies only for suit against them individually (Docket No. 51, Pl. Memo. at 4-5).  If so, this Court recommends focusing on absolute immunity over so much of these defendants' official duties that are covered by that immunity and the remainder of their activities are covered (if at all) by Eleventh Amendment or qualified immunities.

Defendants' claim of absolute immunity governs the period from plaintiff's Indictment through his trial through the post-conviction period including plaintiff's 440 Motion.  For the reasons stated above, this Court again would **grant defendants' motion for summary judgment on absolute immunity grounds** for that entire period.  This immunity also reaches plaintiff's claims for supervisory liability (ordinarily seen as administrative functions), see Van de Kamp, supra, 555 U.S. 335.

D.    Qualified Immunity

Plaintiff argues that defendants never claimed qualified immunity (Docket No. 51, Pl. Memo. at 5).  Defendants did assert an affirmative defense of qualified immunity in their Answer (Docket No. 7, Ans. ¶ 17), although their present motion is not based on that form of immunity. Given the recommendation that this case be dismissed based on absolute immunity (and that

36

defendants have not yet moved for qualified immunity), this Court **should not address qualified immunity at this time**.

      E.      Eleventh Amendment Immunity

Defendants alternatively argue for sovereign immunity for defendants acting in their official capacities under the Eleventh Amendment.  Plaintiff distinguishes suits against defendant prosecutors in the official capacity (subject to Eleventh Amendment immunity) and individually (subject to absolute or qualified immunity, if available) (Docket No. 51, Pl. Memo. at 4-5).  Again, given the recommendation above that defendants' functions were protected against suit by absolute liability, the fact that they also enjoy sovereign immunity under the Eleventh Amendment when sued in their official capacity is of no moment.

      F.      <u>Monell</u> Claim

Finally, regardless of their claimed absolute immunity defendants argue that plaintiff fails to allege a <u>Monell</u> claim in his original Complaint.  In seeking leave to amend, plaintiff cites to a pattern of similar constitutional violations (Docket No. 51, Pl. Memo. at 9-10).  Plaintiff argues supervisory liability for policies or customs of condoning Assistant District Attorneys doing anything to secure a conviction; ignoring exculpatory evidence from the United States Attorney causing plaintiff's prolonged confinement; eliciting coerced confessions from mentally incapacitated individuals; and failing to train on the obligation to produce <u>Brady</u> material and other constitutional obligations (<u>id.</u> at 9).  This Court above noted the cases plaintiff cited as similar instances.  In <u>Van de Kamp</u>, the Supreme Court held that supervisory liability of a prosecutor is also covered by absolute liability, where the error and failure to train to avoid it, is connected to trial conduct and is thus immune, 555 U.S. at 344.

As found above, defendants' activities, even those that appear administrative such as the training of Assistant District Attorneys, were in fact advocacy as part of their continuing duty to produce exculpatory material and therefore immune, see Warney, 587 F.3d at 125.  Plaintiff's Monell claims (as alleged originally or potentially alleged as amended) **should be dismissed against these defendants** and defendants' motion for summary judgment (Docket No. 45) should be **granted**.

IV.    Discovery

In light of the disposition of plaintiff's motion for leave to amend the Complaint (Docket No. 51) and defendants' motion for summary judgment (Docket No. 45), plaintiff **is not entitled** to depose defendants prior to responding to defendants' motion or production of defendants' prosecution files.  Plaintiff's motion to compel (Docket No. 42) also is **denied**.

V.    Frank Clark

As for the original Complaint, Clark died in September 2017 but no one filed or served a formal notice of his death.  All appearing parties in their moving papers, however, noted his death (Docket No. 45, Defs. Statement ¶ 7, admitted by plaintiff, Docket No. 51, Pl. Counterstatement ¶ 7; Docket No. 51, Pl. Memo. at 1; cf. Docket No. 55, Pl. Reply Memo. at 1). There has been no appearance by a substitute or a personal representative for Clark's estate and it is not apparent that either person was notified about this action or the pending motions therein.

A.    Official Capacity Claims

As stated regarding the proposed Amended Complaint above, under Rule 25(d) Frank Sedita automatically substituted for Clark in the official capacity suit when Clark left office in

2009.  There is no need for notification of Clark's subsequent death for claims under his official capacity.

    B.    Individual Claims

    Rule 25(a) applies to Clark's suit in his individual capacity, with the motion to substitute him triggered by service of a statement noting Clark's death (or "suggestion of death").  A motion to substitute for the dead party must be filed within 90 days of the served notice.  Nothing in Rule 25 requires any party to serve and file a statement noting a death, 6 Moore's Federal Practice—Civil § 25.13[1], & n. 8 (2018).  This rule does not specify who may serve and file the statement, id., § 25.13[2][a], or set a deadline for service and filing of the statement.  Unlike plaintiff's presumption (cf. Docket No. 55, Pl. Reply Memo. at 1), defendants are not required to serve and file this suggestion of death—any party may do so.  The rule also does not specify formal requirements for the statement.  The rule merely calls for the statement to be served and filed, id., § 25.13[2][b].  This service should include the representatives of the deceased, id., § 25.13[2][b], at 25-25 (3d ed. 2013).

    While this Court and the present parties are aware of Clark's demise as noted in the moving papers,[3] the unknown element is who is the personal representative or substitute for Clark.  "Actual knowledge of the fact of death is never sufficient to begin the running of the 90-day period," Moore's, supra, § 25.13[2][b], at 25-14 to 25-15 (3d ed. 2013).  The moving papers here cannot serve as the formal suggestion of death because Clark's representative or substitute were not served (and absent proof of service upon such persons).  Until someone starts this substitution process by filing and serving a suggestion of death upon all parties (thus starting the

---

[3]Cf. Form 9 of Appendix of Forms, Statement Noting a Party's Death, abrogated Dec. 1, 2015.

90-day period for the motion for substitution), this Court may proceed to judgment with Clark, see id., § 25.12[5] (3d ed. 2013); Ciccone v. Secretary of Dep't of Health and Human Servs., 861 F.2d 14, 15 n.1 (2d Cir. 1988) (no statement suggesting death was filed, defect in parties listed is not fatal to action). Courts have recognized that they could acknowledge the death of a party and order substitution of a personal representative, First Idaho Corp. v. Davis, 867 F.2d 1241, 1242 (9th Cir. 1989); Moore's, supra, § 25.12[5], at 25-20 & n.21 (3d ed. 2013); see Covert v. Liggett Group, Inc, 750 F. Supp. 1303, 1311 (M.D. La. 1990) (court gave beneficiaries of deceased plaintiff thirty days to substitute for decedent).

If this case were to proceed, this Court eventually would need to address Clark's status in his individual capacity (or his representative or substitute). On the present Recommendation, however, this Court need not address the status of claims against Clark individually due to his death. This Court also need not seek his representative or substitute at this time. This Court would render judgment as to Clark.

VI.    Results

Taken together, plaintiff's motion for leave to amend the Complaint (Docket No. 51) generally should be **denied**; as a result, the pleading at issue is the original Complaint, save its amendment removing the Erie County District Attorney's office as a defendant. Defendants' motion for summary judgment against that original pleading (as thus modified) (Docket No. 45) **should be granted** on absolute immunity grounds. Plaintiff **is not entitled** to pre-summary judgment discovery (cf. Docket No. 51, Pl. Memo. at 2-4). As a result, plaintiff's initial motion to compel (Docket No. 42) also is **denied**. Given the death of defendant Frank Clark and no

service or filing of a statement formally noticing this fact, **no additional action is needed** as to claims against him individually until such a notice is filed and served.

After Judge Vilardo ultimately disposes of the motion for summary judgment and he determines that some claims remain for adjudication, this Court will enter an amended Scheduling Order to allow for completion of discovery and setting deadline for further dispositive motions (cf. Docket No. 42, Pl. Motion to Compel and to Extend the Scheduling Order). This Court also would inquire as to the status of claims against the late Frank Clark individually (provided any remain). Otherwise, by adopting this Report, this case should be dismissed.

CONCLUSION

For the reasons stated above, plaintiff's motion for leave to amend the Complaint (Docket No. 51) is **denied**. In light of this resolution, defendants' motion for summary judgment under the original Complaint (Docket No. 45) should be **granted** at a minimum to dismiss the Erie County District Attorney's Office as a suable defendant. As for the remaining claims, defendants' motion for summary judgment should be **granted on absolute immunity grounds**. Claims against the late Frank Clark remain as alleged. Plaintiff's original motion to compel (Docket No. 42) is **denied**. So much of plaintiff's motion (id.) seeking extension of the Scheduling Order will be **granted in part**, assuming a claim remains for adjudication following objections to this Report & Recommendation. In that event, this Court will enter an Amended Scheduling Order. Otherwise, upon adoption of this Report & Recommendation, this case would be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        May 18, 2018