UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
MAR 18 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

JOSUE ORTIZ,

                Plaintiff,

         v.

KENNETH F. CASE, FRANK A. SEDITA, III,
FRANK J. CLARK, and THE ERIE COUNTY
DISTRICT ATTORNEY'S OFFICE,

                Defendants.

**DECISION AND ORDER**

1:16-CV-00322 EAW

## **INTRODUCTION**

Plaintiff Josue Ortiz ("Plaintiff") has sued defendants the Erie County District Attorney's Office (the "ECDAO"), Kenneth F. Case ("Case"), Frank A. Sedita, III ("Sedita"), and Frank J. Clark ("Clark") (collectively "Defendants")[1] for violations of his civil rights related to his arrest and conviction for the murders of Nelson and Miguel Camacho, and his subsequent exoneration. (Dkt. 1). The matter has been referred to Magistrate Judge Hugh B. Scott for hearing and disposition of all non-dispositive motions or applications, supervision of discovery, and to hear and report upon dispositive motions for consideration by the district judge. (Dkt. 48).

---

[1]    Case is a former Assistant District Attorney in the ECDAO, while Sedita and Clark both formerly served as Erie County District Attorney. (*See* Dkt. 1 at ¶¶ 8, 12). Case, Sedita, and Clark are collectively referred to herein as the "Individual Defendants."

Currently pending before the Court is Judge Scott's Report and Recommendation dated May 18, 2018 (Dkt. 56) (the "R&R"), regarding Plaintiff's motion to compel discovery (Dkt. 42), Defendants' motion for summary judgment (Dkt. 45), and Plaintiff's cross-motion for leave to amend (Dkt. 51). For the reasons set forth below, the Court adopts the R&R's recommendation that Defendants' motion for summary judgment be granted and Plaintiff's cross-motion for leave to amend be denied. In light of this disposition, Plaintiff's motion to compel discovery is denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background underlying the instant action and the pending motions is set forth in detail in the R&R, familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the relevant facts in its analysis as necessary.

The instant action was filed on April 25, 2016. (Dkt. 1). Defendants filed their answer to the complaint on August 15, 2016. (Dkt. 7). On September 29, 2016, Judge Scott entered a Scheduling/Case Management Order providing, in relevant part, that motions to amend the pleadings were due by no later than October 28, 2016. (Dkt. 11 (the "Scheduling Order")). On December 13, 2017, Judge Scott entered a First Amended Scheduling/Case Management Order (Dkt. 40 (the "Amended Scheduling Order")) extending many of the deadlines set forth in the Scheduling Order but not the deadline for motions to amend the pleadings.

Plaintiff filed the instant motion to compel discovery (Dkt. 42) on February 9, 2018. Within that motion, Plaintiff sought a further extension of various deadlines, including the

deadline for amendment of pleadings. (Dkt. 42-1 at 4). On February 12, 2018, Judge Scott issued a Text Order holding the deadlines set forth in the Amended Scheduling Order in abeyance pending resolution of the motion to compel. (Dkt. 43). Defendants filed a response on February 28, 2018 (Dkt. 44), and Plaintiff filed a reply on March 7, 2018 (Dkt. 47).

Defendants filed their motion for summary judgment on March 6, 2018. (Dkt. 45). Plaintiff filed his response and cross-motion for leave to file an amended complaint on April 12, 2018. (Dkt. 51). Defendants filed a combined reply in further support of their motion for summary judgment and response in opposition to Plaintiff's cross-motion for leave to amend on April 25, 2018. (Dkt. 54). Plaintiff filed his reply on April 30, 2018. (Dkt. 55).

Judge Scott issued the R&R on May 18, 2018. (Dkt. 56). The R&R recommends that Defendants' motion for summary judgment be granted and Plaintiff's cross-motion for leave to amend be denied. (*Id.* at 23-36). In light of these recommendations, the R&R further recommends that Plaintiff's motion to compel be denied. (*Id.* at 38).

Plaintiff filed objections to the R&R on June 1, 2018. (Dkt. 57). Defendants filed their response on June 25, 2018 (Dkt. 59), and Plaintiff filed his reply on July 9, 2018 (Dkt. 60). On February 11, 2019, the presiding district judge recused himself. (Dkt. 65). The matter was subsequently reassigned to the undersigned.

## DISCUSSION

### I.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), where a party makes specific objections to a magistrate judge's report and recommendation, the district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "The Court reviews unobjected-to findings for clear error." *Am. Ins. Co. v. City of Jamestown*, 914 F. Supp. 2d 377, 384 (W.D.N.Y. 2012). After conducting its review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In this case, Plaintiff has objected to all of Judge Scott's recommendations. (Dkt. 57).[2] Defendants have not filed any objections to the R&R. The Court has reviewed Judge Scott's recommendations *de novo* and, for the reasons set forth below, adopts Judge Scott's recommendations that Defendants' motions for summary judgment be granted and Plaintiff's cross-motion for leave to amend be denied. In light of the Court's grant of summary judgment to Defendants and denial of Plaintiff's request to amend, Plaintiff's motion to compel discovery is denied as moot.

---

[2]      Defendants argue that Plaintiff has failed to set forth his objections with the specificity required by Local Rule of Civil Procedure 72(b). (Dkt. 59 at 2). They contend that Plaintiff's objections should be rejected outright and that the Court should review the R&R solely for clear error. (*Id*. at 2-3). For the reasons discussed below, the Court finds that upon *de novo* review, Defendants are entitled to summary judgment. Accordingly, the Court need not and does not reach this argument.

## II.    Defendants' Motion for Summary Judgment

Although the R&R first addressed Plaintiff's cross-motion for leave to file an amended complaint, the Court finds it more efficient in deciding Plaintiff's objections to first consider whether Defendants have demonstrated that they are entitled to summary judgment with respect to the claims set forth in the complaint. For the reasons set forth below, the Court concludes that Defendants have satisfied their burden and that their motion for summary judgment should be granted.

### A.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of

proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**B.    Claims Against the ECDAO**

As an initial matter, all parties agree that the ECDAO is not an appropriate defendant in this matter. (*See* Dkt. 51-8 at 3 ("Plaintiff acknowledges that the summary judgment motion should be granted to the extent of dismissing the DA's Office because it is not a legal entity that can be sued.")). Accordingly, all claims against the ECDAO must be dismissed.

**C.    Claims Against the Individual Defendants in their Individual Capacities**

With respect to the Individual Defendants, the Court agrees with Judge Scott that Plaintiff's claims against them in their individual capacities are barred by absolute prosecutorial immunity. All of the individual defendants in this case were prosecutors at the

time of their alleged wrongdoing, and prosecutors are absolutely immune to suits under 42 U.S.C. § 1983 that arise from the performance of their role as advocates. *See Warney v. Monroe Cty.*, 587 F.3d 113, 121 (2d Cir. 2009). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original and quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)).

Notwithstanding the broad reach of absolute prosecutorial immunity, it does not extend to "those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Id.* (emphasis added). As the Supreme Court has explained, absolute prosecutorial immunity does extend to "certain administrative activities," such as training assistant district attorneys, because those "administrative obligations . . . are . . . unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities," inasmuch as they "necessarily require legal knowledge and the exercise of related discretion[.]" *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009); *see also Warney*, 587 F.3d at 124 ("[A] prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function."). Similarly, investigative acts are covered by absolute prosecutorial immunity if they are "reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction," but not if they are "undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for

- 7 -

indications of criminal activities and determination of the perpetrators." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012). "Thus, to establish immunity, the ultimate question is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." *Warney*, 587 F.3d at 121 (quotations omitted).

Allegations of improper motive and intentional wrongdoing are not relevant to the inquiry into whether absolute prosecutorial immunity exists. As the Second Circuit has explained:

> The relevant question . . . is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor. If the generic acts are within those functions, absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts. Otherwise, the absolute immunity would not be absolute.

*Giraldo*, 694 F.3d at 166.

Here, Plaintiff's claims are all related to the Individual Defendants' roles as advocates and performance of the prosecutorial function. Plaintiff alleges that the Individual Defendants failed to properly evaluate the evidence against him, including by "remov[ing] pieces of evidence that did not fit into the prosecution's theory," and that they "prosecute[d] a case known to have serious questions of credibility and trustworthiness, all contrary to the pursuit of justice." (Dkt. 1 at ¶ 19). Plaintiff further alleges that the Individual Defendants hid and refused to turn over exculpatory evidence to his attorneys, despite "significant inconsistencies between the purported 'confession' and the objective physical evidence and initial witness

descriptions of the perpetrators of the crime[]." (*Id.* at ¶ 20). Moreover, according to Plaintiff, when Sedita received information from the United States Attorney's Office in 2012 indicating that Plaintiff was innocent of the crimes for which he had been convicted, Sedita "would not agree to [Plaintiff's] release from custody," but instead forced Plaintiff to file a motion to vacate his conviction, which Sedita opposed. (*Id.* at ¶¶ 29-31). Plaintiff claims that it was not until December 8, 2014, that Sedita finally conceded his innocence and withdrew opposition to the motion to vacate his conviction. (*Id.* at ¶ 37).

All of the actions allegedly taken by the Individual Defendants in derogation of Plaintiff's constitutional rights fall under the ambit of advocacy and are covered by absolute prosecutorial immunity. First, it is beyond cavil that the Individual Defendants' assessment of the case against Plaintiff, their evaluation and organization of the evidence, and their ultimate decision to prosecute Plaintiff constituted advocacy and cannot subject the Individual Defendants to liability under § 1983, no matter how poorly or unethically these activities were allegedly performed. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (absolute prosecutorial immunity extends to "evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made").

Second, with respect to Defendants' alleged failure to turn over exculpatory evidence during the initial prosecution of Plaintiff, "[a] prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding

of exculpatory information. Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages." *Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir. 2005) (quotations omitted); *see also Dory*, 25 F.3d at 83 (absolute prosecutorial immunity protected prosecutor from claim that he had participated in a conspiracy to present false evidence at a criminal trial).

Third, with respect to Plaintiff's claim that the Individual Defendants ignored exculpatory evidence that would have called into question the validity of his conviction, the Second Circuit has expressly stated that absolute prosecutorial immunity covers investigative activities "reasonably related to decisions whether or not . . . to defend a conviction[.]" *Giraldo*, 694 F.3d at 166; *see also Warney*, 587 F.3d at 122 (holding that there is "no principled reason to withhold absolute immunity for work performed in defending a conviction from collateral attack"). The Individual Defendants' receipt and evaluation of potentially exculpatory evidence was part of their role as advocates and falls within the bounds of absolute prosecutorial immunity.

Finally, Plaintiff's claims that Clark and Sedita implemented unconstitutional policies of (1) "condon[ing] whatever conduct an ADA felt was necessary . . . to secure and sustain a conviction, (2) ignoring exculpatory evidence, (3) encouraging eliciting coerced confessions from mentally incapacitated individuals, and (4) failing to train ADAs regarding the handling of exculpatory evidence and "appropriate prosecutorial action" (*see* Dkt. 47 at 6-7)[3] are all

---

[3]   Plaintiff's objections do not differentiate between policies and customs alleged in the complaint and in the proposed amended complaint. Accordingly, although some of these

barred by absolute prosecutorial immunity. In *Van de Kamp*, the Supreme Court held that allegations that a district attorney failed to properly train and supervise assistant district attorneys (in that case, specifically with regard to the handling of impeachment-related information) fell within the bounds of absolute prosecutorial immunity. 555 U.S. at 344. The *Van de Kamp* court expressly held that methods of training and supervision related to the handling of evidence and the conduct of trial are "directly connected with the prosecutor's basic trial advocacy duties[.]" *Id.* at 346. Here, as in *Van de Kamp*, the alleged supervisory and training failures by Clark and Sedita all relate to the manner in which the ECDAO conducted criminal prosecutions, and any individual capacity claims against Clark and Sedita based upon them are barred by absolute prosecutorial immunity.

Plaintiff's objections to Judge Scott's recommendation that his claims against the Individual Defendants in their individual capacities are barred by absolute prosecutorial immunity are based on two faulty arguments. First, Plaintiff contends that *all* administrative and investigative activities performed by a prosecutor merit only qualified immunity. (*See* Dkt. 57 at 5). This is a misapprehension of the law. As explained above, "a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function." *Warney*, 587 F.3d at 124 (emphasis added). Similarly, investigative acts are covered by absolute prosecutorial immunity if they are "reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution,

---

allegations are contained in the proposed amended complaint, the Court has considered all of them here.

or to defend a conviction[.]" *Giraldo*, 694 F.3d 166. Here, while it may be the case that the Individual Defendants undertook some administrative or investigative acts, by virtue of Plaintiff's own allegations, any such acts were related to the Individual Defendants' performance of the core advocacy functions of evaluating and prosecuting the case against Plaintiff, including defending the conviction from a collateral attack.

Second, Plaintiff argues that absolute prosecutorial immunity cannot apply to any of the Individual Defendants' actions between December 2007, when Plaintiff's appeal was completed, to April 2013, when Plaintiff made his motion to vacate his conviction, because "there were no court proceedings pending that Defendants were involved in relative to Plaintiff[.]" (Dkt. 57 at 11). Contrary to Plaintiff's contention, there is no bright-line rule that absolute prosecutorial immunity is dependent on the pendency of formal judicial proceedings. To the contrary, the Second Circuit has held that "[s]uch immunity also extends to acts undertaken by a prosecutor <u>in preparing for the initiation of judicial proceedings</u> or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quotation omitted and emphasis added). The Second Circuit has further identified "decisions whether or not to . . . defend a conviction" as part of the prosecutor's role as an advocate, *Giraldo*, 694 F.3d 161, and has stated that "the duty of prosecutors to prevent unjust imprisonment" is "a part of the prosecutor's advocacy function," *Warney*, 587 F.3d at 125. The Individual Defendants' evaluation and treatment of evidence calling into question the validity of Plaintiff's conviction was undertaken in furtherance of

- 12 -

their advocacy functions, and as such, Plaintiff's claims based upon this conduct are barred by absolute prosecutorial immunity. *See id.* at 124 (finding that a decision "whether to seek to vacate [the plaintiff's] conviction" was an "exercise[] of judgment made in the 'judicial phase' of proceedings integral to the criminal justice process").

Plaintiff suggests that he needs further discovery into the "administrative and investigative activities" the Individual Defendants performed related to the evidence calling into question his guilt before summary judgment can be granted. (Dkt. 57 at 11-12). This argument is unavailing. As discussed above, the issue is not whether the Individual Defendants were performing administrative and investigative activities. "Good prosecutors may—usually should—perform acts reasonably characterized as investigative at all phases of a criminal proceeding." *Giraldo*, 694 F. 3d at 166. Instead, the determinative fact is that those activities were related to the Individual Defendants' decision whether to seek to vacate Plaintiff's conviction. The undisputed facts and Plaintiff's own allegations plainly establish that even administrative and investigative tasks undertaken by the Individual Defendants were done so in their advocacy role—discovery will not alter that conclusion.

Moreover, Plaintiff has presented nothing to suggest that the Individual Defendants undertook administrative or investigative acts that were unrelated to their advocacy function. While Plaintiff asserts in conclusory fashion that he "suspect[s] and believe[s] that there were such activities" (Dkt. 57 at 11), a party opposing a summary judgment on the basis that further discovery is required must do more than "speculat[e] as to what potentially could be

discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). In this case, Defendants have demonstrated that the claims Plaintiff asserts against them are barred by absolute prosecutorial immunity, and Plaintiff has failed to explain how additional discovery could be expected to call that conclusion into question.

For all the foregoing reasons, the Court finds, upon *de novo* review, that Plaintiff's claims against the Individual Defendants in their individual capacities are barred by absolute prosecutorial immunity.

### D. Claims Against the Individual Defendants in their Official Capacities

Plaintiff's complaint purports to assert claims against Sedita and Clark in their official capacities. (*See* Dkt. 1 at 1). An official capacity suit is "in all respects other than name, to be treated as a suit against the [governmental] entity [of which the officer was an agent]. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 149, 165 (1985) (quotation omitted and emphasis in original). Moreover, "since the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities. They are not available to the extent that the officials are sued in their official capacities." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, the Court's conclusion as to absolute prosecutorial immunity does not end its inquiry into the viability of Plaintiff's official capacity claims.

- 14 -

As a threshold matter in assessing Plaintiff's official capacity claims, the Court must distinguish between matters in which Sedita and Clark were acting as agents of New York State and matters in which they were acting as agents of Erie County. The Second Circuit has held that a district attorney is "a state rather than a local representative 'when prosecuting a criminal matter[.]'" *Bellamy v. City of N.Y*, 914 F.3d 727, 757 (2d Cir. 2019) (alteration omitted and quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)). On the other hand, where the challenged conduct is the policies and customs of the district attorney's office, "'the district attorney is a municipal policymaker,' because in making decisions other than whether to prosecute the 'district attorney acts as the manager of the district attorney's office, which . . . is a municipal function.'" *Id*. (quoting *Walker v. City of N.Y.*, 974 F.2d 293, 301 (2d Cir. 1992)). This distinction is critical, because New York State enjoys Eleventh Amendment sovereign immunity from § 1983 claims, while local municipalities such as Erie County do not. *See Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) ("The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states. . . . Sovereign immunity does not, however, extend to local governments or municipalities.").

Here, certain of Plaintiff's claims challenge Sedita's and Clark's decisions to initially prosecute Plaintiff despite the claimed weakness of the evidence against him and Sedita's decision not to seek to vacate Plaintiff's convictions. With respect to those particular decisions, Sedita and Clark were acting as agents of New York State, and Eleventh

Amendment sovereign immunity bars Plaintiff's official capacity claims. *See Baez*, 853 F.2d at 77 ("[A]n elected district attorney's powers and duties in connection with the prosecution of a criminal proceeding are the same as those of an Assistant Attorney General appointed to handle such a prosecution. A county has no right to establish a policy concerning how either official should prosecute violations of State penal laws."); *see also D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017) (finding that "the Eleventh Amendment shields [a district attorney and assistant district attorney] from suit in their official capacities, to the extent that [the plaintiff] attacks their prosecutorial decisions over the course of his case").

Plaintiff has also set forth alleged Erie County policies and customs he claims the Individual Defendants implemented, resulting in the violation of Plaintiff's constitutional rights. Eleventh Amendment sovereign immunity does not bar these official capacity claims. However, the Court agrees with Defendants that Plaintiff's claims based on alleged Erie County policies and customs are inadequately supported. "Under the standards of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality can be held liable under Section 1983 if the deprivation of a plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 340 (N.D.N.Y. 2014). To set forth a viable claim for municipal liability under *Monell*, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.' Put another way, conclusory allegations of a

municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015) (quoting *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 403-04 (2d Cir. 2018) ("[T]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (quotation omitted); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78 (E.D.N.Y. 2015) (conclusory allegations of a municipal policy or custom "cannot even survive a motion to dismiss, let alone summary judgment").

In this case, Plaintiff's allegations of municipal policy or custom are conclusory and insufficient to establish a viable claim under *Monell*. (*See, e.g.,* Dkt. 1 at ¶ 43 (alleging that the ECDAO had a policy or custom to "endorse, authorize and enforce unconstitutional methods, investigations, arrests, identifications, evidence disclosure, and all other procedures related to the Constitutional rights of citizens, including the Plaintiff herein"), ¶ 49 (alleging that the ECDAO had a policy or custom that "a convicted person was not provided constitutional rights even after his conviction and incarceration was reasonably known and proven to be wrongful and unjust")). "A plaintiff's conclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 330 (S.D.N.Y. 2015) (quotation and alteration omitted). Plaintiff has failed to submit any evidence of a municipal policy or custom in opposition to

Defendants' motion for summary judgment, and has therefore not established the existence of a genuine issue of material fact.[4]   Accordingly, the Court finds that the Individual Defendants are entitled to summary judgment with respect to Plaintiff's official capacity claims related to alleged Erie County policies and customs.

## III.   Plaintiff's Cross-Motion for Leave to Amend

### A.   Legal Standard

"A district court has broad discretion in determining whether to grant leave to amend[.]" *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Two provisions of the Federal Rules of Civil Procedure guide the Court's analysis of a motion for leave to amend where the deadline for such motions, as set forth in a scheduling order, has passed.  The first is Rule 15(a)(2), which provides that once the time for leave to amend as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The second is Rule 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "Where, as here, a scheduling order governs amendments to the complaint, . . . the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of

---

[4]   Plaintiff has added additional allegations in support of his *Monell* claims in the proposed amended complaint; the Court considers the adequacy of those allegations below.

good cause." *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (quotations and citations omitted).

"In determining whether a movant has satisfied the 'good cause' standard under Rule 16(b), 'the primary consideration is whether the moving party can demonstrate diligence.'" *Charter Commc'ns, Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 254 (S.D.N.Y. 2018) (quoting *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). However, diligence is "not . . . the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244.

Additionally, in considering whether to allow amendment, the Court should consider whether the proposed amendments are futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

Judge Scott recommended that the Court deny Plaintiff's cross-motion for leave to amend on two bases: (1) that it was untimely under Rules 15 and 16; and (2) that the proposed amendments were futile. (R&R at 23-32). The Court agrees with Judge Scott that Plaintiff's proposed amendments are futile, for the reasons set forth below. The Court further agrees with Judge Scott that Plaintiff's request for leave to amend is untimely. Accordingly, the Court denies Plaintiff's cross-motion.

**B.    Plaintiff's Proposed Amendments are Futile**

Plaintiff's proposed amended complaint differs from the complaint in the following material respects: (1) the proposed amended complaint adds an allegation that between November 16, 2004 (the date Plaintiff was arrested), and June 16, 2006, the Individual Defendants "conducted investigations and administration of the DA Office relative to a policy or custom in the DA Office at that time that the City of Buffalo and the Buffalo Police Department permitted the DA Office to direct and control investigations" (Dkt. 52-1 at 7); (2) the proposed amended complaint adds additional detail regarding the dates on which the United States Attorney's Office provided exculpatory evidence to the ECDAO (*id.* at 8); (3) the proposed amended complaint adds an allegation that there were no court proceedings pending related to Plaintiff in which Defendants were involved from December 2007 to April 23, 2013 (*id.* at 9); and (4) the proposed amended complaint identifies four cases that it claims support the *Monell* claims (*id.* at 16). None of these proposed amendments alleviates the fatal flaws in Plaintiff's claims discussed above, and so the proposed amendments are futile.

The majority of Plaintiff's proposed amendments are premised on the two faulty arguments already considered and rejected by the Court. Administrative and investigate activities allegedly performed by the Individual Defendants after Plaintiff's arrest were related to the evaluation of the evidence against him and the decision whether or not to initiate a prosecution and were reasonably related to the Individual Defendants' roles as advocates. It is of no moment whether the Individual Defendants performed investigative tasks related to

the information they received from the United States Attorney's Office related to the sufficiency of Plaintiff's conviction, nor is it dispositive that no formal legal proceeding existed at that time, for all the reasons discussed above. Accordingly, the first three proposed amendments set forth above would not render any of Plaintiff's claims viable.

With respect to Plaintiff's *Monell* claims, the Court finds that Plaintiff's proposed amended complaint fails to raise a genuine issue of material fact. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (where a motion for leave to amend is made in opposition to a motion for summary judgment, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact"); *see also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (where a motion for leave to amend is made in response to a motion for summary judgment, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact"). Here, Plaintiff has attempted to establish genuine issues of material fact regarding the existence of an Erie County policy or custom by listing four cases in the proposed amended complaint: *Okongwu v. Cty. of Erie*, No. 14-CV-832S, 2018 WL 1383233 (W.D.N.Y. Mar. 19, 2018); *Mixon v. Sedita*, 757 F. Supp. 2d 229 (W.D.N.Y. 2010); *Ortiz v. Case*, No. 16CV322V, 2017 WL 2720087 (W.D.N.Y. June 23, 2017); and *Peters v. City of Buffalo*, 848 F. Supp. 2d 378 (W.D.N.Y. 2012). However, Plaintiff has failed to demonstrate that these cases support his *Monell* claims.

First, *Ortiz v. Case*, No. 16-CV-322, 2017 WL 2720087 (W.D.N.Y. June 23, 2017), is simply an earlier decision in the instant matter, in which Judge Scott denied Plaintiff's motion to compel certain discovery. The alleged occurrence of a constitutional violation in Plaintiff's own case, without more, is insufficient to establish the existence of a municipal policy or custom. *See Green v. City of N.Y.*, 465 F.3d 65, 81 (2d Cir. 2006) ("A reasonable jury could not find that evidence of one instance [of a constitutional violation] constituted a practice so manifest as to imply the constructive acquiescence of senior policy-making officials.") (quotation omitted); *Anderson v. City of N.Y.*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights."). Moreover, as discussed above, to the extent Plaintiff is challenging the decisions that Sedita and Clark made regarding his case, those actions constitute actions of New York State and official capacity claims related to them are barred by the Eleventh Amendment.[5]

The other cases cited by Plaintiff are either cases where the claims against the ECDAO were dismissed (*Okongwu* and *Mixon*) or that were resolved without any finding of liability (*Peters*). Courts in this Circuit have routinely rejected arguments (like the one Plaintiff makes here) that would require a jury to conclude that "if a complaint, whether administrative or by way of a civil action, is filed against an [official], it follows *ipso facto* that he is guilty of a constitutional violation." *Rasmussen v. City of N.Y.*, 766 F. Supp. 2d 399, 409 (E.D.N.Y.

---

[5]     Plaintiff also has not come forward with any evidence of "the existence of a formal policy officially endorsed by the municipality," *Schroeder v. Cty. of Nassau*, 158 F. Supp. 3d 123, 130 (E.D.N.Y. 2016), and therefore has not identified any triable issues of fact regarding the existence of such a formal policy.

2011); *see also Whitfield v. City of Newburgh*, No. 08 CV 8516 (RKE), 2015 WL 9275695, at *30 (S.D.N.Y. Dec. 17, 2015) ("Courts have made clear that, without more, a plaintiff's citation to various lawsuits involving . . . [similar claims of constitutional violations] is not probative of the existence of an underlying policy of a municipality[.]") (quotation omitted and collecting cases) (granting summary judgment on *Monell* claim where, in opposing motion for summary judgment, the plaintiff identified nine similar lawsuits filed over a five-and-a-half year period, "each of which was voluntarily dismissed following a settlement conference"); *Morris v. City of N.Y.*, No. 12-CV-3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015) (granting summary judgment on *Monell* claims and explaining that "[t]he fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the [municipality] has a custom or policy that fosters or results in wrongdoing"). Here, none of the cases cited by Plaintiff resulted in a finding of liability. Moreover, Plaintiff has offered no facts regarding these lawsuits beyond their mere existence, such that the Court could conclude that a triable issue of fact existed with respect to a purported Erie County policy or custom.

Plaintiff also has not demonstrated that additional discovery is necessary as to the existence of an Erie County policy or custom. A party opposing summary judgment on the basis that further discovery is required must submit an affidavit setting forth: "the nature of

the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners*, 34 F.3d at 1138. Here, in opposition to Defendants' motion for summary judgment, Plaintiff contended that he had not been able to take depositions from Defendants Case and Sedita. (Dkt. 51-8 at 3). However, Plaintiff failed to explain how such depositions were reasonably expected to show a genuine issue of material fact as to the existence of the alleged municipal policies or customs. Plaintiff also failed to provide any information regarding other efforts he had made to obtain facts related to the alleged policies and customs at issue in this case or why those efforts had been unsuccessful. Additionally, in his objections to the R&R, Plaintiff merely reiterated his general assertion that he was entitled to discovery, but again failed to provide the Court with any information as to why such additional discovery could reasonably be expected to establish a genuine issue of material fact with respect to his *Monell* claims. (*See* Dkt. at 14-16). "[B]are, generalized assertions [that additional discovery is needed] cannot justify delaying the resolution of a summary judgment motion." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151-52 (2d Cir. 2016).

For all these reasons, and for the reasons discussed in connection with Defendants' motion for summary judgment, the Court finds that Plaintiff's proposed amended complaint fails to state a viable cause of action or to raise a genuine issue of material fact and that the proposed amendments are therefore futile. Plaintiff has further failed to demonstrate that

additional discovery is required. The Court accordingly denies Plaintiff's motion for leave to amend.

### C.     Plaintiff's Motion for Leave to Amend is Untimely

The Court also agrees with Judge Scott that Plaintiff's motion for leave to amend is untimely and that good cause does not exist to extend the scheduling deadlines in this case. The deadline for motions to amend in this case was October 28, 2016. (Dkt. 11). On December 13, 2017, Judge Scott entered the Amended Scheduling Order, which extended many of the deadlines set forth in the Scheduling Order but, importantly, not the deadline for motions to amend the pleadings. Accordingly, at the latest, as of December 13, 2017, Plaintiff was fully on notice that the deadline for motions to amend had expired.[6] Plaintiff nevertheless failed to seek an extension of the deadline until February 2018, more than a year after the deadline to amend had expired. Plaintiff did not file his motion for leave to amend until April 2018, nearly 18 months after expiration of the deadline to amend. Under these circumstances, and taking into account all relevant factors, including the potential for prejudice to Defendants, who have never consented to an extension of the deadline to amend and who face

---

[6]     These facts are different from those in the related case *Ortiz v. Wagstaff*, Civil Action No. 1:16-cv-00321, where no amended scheduling order was ever entered despite the parties having agreed to a proposal that would have extended the deadline for filing motions to amend. In this case, unlike in *Wagstaff*, the entry of the Amended Scheduling Order clearly established that the deadline for filing motions to amend had not been extended, and thus there is no basis to conclude that Plaintiff could have been confused about the deadline for filing a motion to amend.

the potential of extensive discovery related to futile claims, the Court finds that Plaintiff has not satisfied Rule 16's good cause standard.

## IV.  Plaintiff's Motion to Compel

Finally, Plaintiff has filed a motion to compel various forms of discovery. (Dkt. 42). Having found for the reasons discussed above that Defendants are entitled to summary judgment, the Court denies Plaintiff's motion to compel as moot.

## CONCLUSION

For the reasons set forth above, the Court adopts the recommendations set forth in the R&R. (Dkt. 56). The Court grants Defendants' motion for summary judgment (Dkt. 45) and denies Plaintiff's cross-motion for leave to file an amended complaint (Dkt. 51). Plaintiff's motion to compel discovery (Dkt. 42) is denied as moot. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 18, 2019
        Rochester, New York